901 A.2d 262

**Robin Tyronne CATHCART**

v.

**STATE of Maryland.**

**No. 2758, Sept. Term, 2004.**

Court of Special Appeals of Maryland.

June 30, 2006.

Geraldine K. Sweeney (Nancy S. Forster, Public Defender, on the brief), Baltimore, for appellant.

Sarah Page Pritzlaff (J. Joseph Curran, Jr., Attorney General, on the brief), Baltimore, for appellee.

Panel: BARBERA, SHARER, WOODWARD, JJ.

SHARER, J.

Following a jury trial, in the Circuit Court for Prince George's County, appellant, Robin Tyronne Cathcart, was found guilty of first degree assault, second degree assault, and

false imprisonment.[1] After merging the two assault convictions, appellant was sentenced to ten years in prison for first degree assault. For the false imprisonment conviction, he received a consecutive life sentence, with all but ten years suspended. The court did not impose a period of probation in addition to the executed sentences. In his timely appeal, appellant presents two issues for our review, which, as slightly rephrased, are: [2]

1. Whether the sentence imposed for common law false imprisonment was unconstitutionally disproportionate.

2. Whether there was sufficient evidence to support appellant's conviction for first degree assault.

For the reasons that follow, we find that the sentence imposed for false imprisonment was not unconstitutionally disproportionate, and that the evidence was sufficient to sustain appellant's first degree assault conviction. Accordingly, we shall affirm the judgments of the trial court.

## BACKGROUND

At approximately 1:00 a.m. on December 28, 2003, appellant met Antoinette Drayton, his former live-in girlfriend and mother of their seven month old daughter, outside of her apartment, in order to return her keys. Once inside the apartment, appellant informed Drayton that he wanted to talk about their relationship and her use of drugs in the presence

---

1. In addition, appellant was charged with various sexual offenses, including first degree rape. He was acquitted of all of those charges.

2. In his brief, appellant asks:
 1. Under the circumstances of this case, is the imposition of a life sentence for the common law misdemeanor of false imprisonment unconstitutional as disproportionate, and therefore illegal?
 2. Did the trial judge err in denying defense motions for judgment of acquittal for first degree assault where there was no evidence of use of a firearm, and no evidence of "serious physical injury" as defined in Md.Code, Criminal Law Article, § 3–201(b)?

of their daughter. Drayton told appellant that she had been using drugs all day and did not want to talk. She suggested that they walk to the store, but appellant said that they were not going anywhere, and smacked her.

According to Drayton's testimony at trial, appellant forced her to perform various sex acts and, when she again tried to leave, appellant smacked her two more times. While Drayton was lying on her back on the floor, and appellant was sitting on her stomach, appellant grabbed her by the throat with his left hand, and began punching her in the face. Drayton lost consciousness during the beating and reported having the sensation "like I didn't even know I was there." Drayton's injuries included two fractures to her jaw, a broken nose, a dislocated chin, multiple hematomas to her face, and a swollen hand. Photographs of Drayton's injuries and her medical records were introduced into evidence at trial.

Following the beating, appellant began "[w]hooping and hollering" that he was "going to go to jail for this shit." Drayton tried to tell appellant that she needed to go to the hospital "before I die." When appellant noticed that Drayton was "bleeding all over the damn place," he got her a towel. Drayton, her eyes swollen, felt around on the floor for her clothes, but appellant told her, "[N]ot yet. We ain't leaving yet." About 45 minutes to an hour passed before appellant agreed to permit Drayton to leave the apartment.

With assistance from appellant, Drayton was allowed to get dressed and was led outside the apartment. Drayton "tried to keep walking," but appellant grabbed her by the arm and asked her what she wanted him to do. Appellant ultimately told Drayton to go to her friend's apartment across the street and not look back. Drayton felt her way to her friend's apartment door at about 3:30 a.m. Thereafter, she was taken to a hospital for treatment.

Additional facts will be set forth as they become necessary to our discussion of the issues.

### 1. Whether the sentence imposed for common law false imprisonment was unconstitutionally disproportionate.

Excessive bail, excessive fines, and cruel and unusual punishment are expressly prohibited by the Eighth Amendment to the United States Constitution.[3] The Eighth Amendment's prohibitions have also been interpreted by the Supreme Court as encompassing a narrow proportionality principle, which forbids sentences "that are 'grossly' or 'significantly' disproportionate in length to the crime being punished." *State v. Bolden,* 356 Md. 160, 165, 737 A.2d 1086 (1999)(citing *Solem v. Helm,* 463 U.S. 277, 287–88, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983)).

The Supreme Court's decisions outlining the narrow scope of proportionality review were summarized by Judge Raker in *State v. Stewart,* 368 Md. 26, 31–32, 791 A.2d 143 (2002):[4]

In *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), the Supreme Court held a sentence of life imprisonment without the possibility of parole for a seventime non-violent felony recidivist unconstitutionally disproportionate. In so finding, the Court emphasized that successful challenges to the proportionality of a particular sentence are exceedingly rare.... The Court stated that appellate courts' proportionality review should be guided by objective criteria, including: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the

---

**3.** Cruel and unusual punishment is also prohibited by the Maryland Declaration of Rights. Article 25 provides "[t]hat excessive bail ought not to be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted, by the Courts of Law." Similarly, Article 16 provides "[t]hat sanguinary Laws ought to be avoided as far as is consistent with the safety of the State; and no Law to inflict cruel and unusual pains and penalties ought to be made in any case, or at any time, hereafter."

**4.** At issue in *Stewart* was whether a 25 year, no parole sentence, pursuant to Md.Code, Article 27 § 286(d), was cruel and unusual punishment.

sentences imposed for commission of the same crime in other jurisdictions." *Id.* at 292, 103 S.Ct. at 3011, 77 L.Ed.2d 637.

In *Harmelin v. Michigan,* [501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991)] the Supreme Court revisited its decision in *Solem.* Justice Kennedy, concurring in the judgment, and writing for himself and three other justices, clarified that "the Eighth Amendment does not require strict proportionality between crime and sentence. Rather it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin,* 501 U.S. at 1001, 111 S.Ct. at 2705, 115 L.Ed.2d 836 (Kennedy, J., concurring). . . . Therefore, a detailed proportionality review based on the criteria set out in *Solem* is "appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Harmelin,* 501 U.S. at 1005, 111 S.Ct. at 2707, 115 L.Ed.2d 836 (Kennedy, J., concurring).

(Footnotes omitted).

In *Ewing v. California,* 538 U.S. 11, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003), the Supreme Court further limited proportionality review under the Eighth Amendment. There, the Court held that a sentence of 25 years to life in prison, for felony grand theft under California's three strikes law, was not grossly disproportionate and therefore did not violate the Eighth Amendment's prohibition of cruel and unusual punishment. *Id.* at 30–31, 123 S.Ct. 1179. In affirming the sentence, Justice O'Connor, writing for a plurality of the Court, emphasized the importance of deferring to the legislature on sentencing matters:

Our traditional deference to legislative policy choices finds a corollary in the principle that the Constitution "does not mandate adoption of any one penological theory." A sentence can have a variety of justifications, such as incapacitation, deterrence, retribution, or rehabilitation. Some or all of these justifications may play a role in a State's sentencing scheme. Selecting the sentencing rationales is

generally a policy choice to be made by state legislatures, not federal courts.

*Id.* at 25, 123 S.Ct. 1179. (citations omitted). Along with the criteria set forth in *Solem* and *Harmelin*, therefore, appellate courts must also show deference to the legislature in reviewing the proportionality of a sentence.[5]

While *Ewing* may have narrowed the Supreme Court's proportionality review, its holding simply reiterated the considerations utilized by the Court of Appeals in reviewing the proportionality of non-capital sentences challenged on Eighth Amendment grounds. In order to provide context for appellant's argument, we shall briefly address and distinguish the cases upon which he relies.

In *Thomas v. State*, 333 Md. 84, 88, 634 A.2d 1 (1993), issues of cruel and unusual punishment were raised after Thomas was sentenced to consecutive terms of 20 and 30 years in prison for separate batteries committed upon his wife. In vacating the 20 year sentence for battery, the Court considered several factors—that Thomas was not a recidivist, that previously approved 20 year sentences for common law assault were far more aggravated, and that the maximum sentence for certain other statutory aggravated assaults was less than the sentence imposed upon Thomas. *Id.* at 98–100, 634 A.2d 1. In the final analysis, the Court concluded that the 20 year sentence was disproportionate. *Id.* at 100–01, 634 A.2d 1. As an example, the Court compared the sentence for the battery committed by Thomas with the statutory offense of assault with intent to maim, disfigure, or disable, for which the maximum sentence was 15 years in prison, and noted:

When it is clear ... that the conduct underlying the simple assault or battery is in fact less serious than the assaultive

---

5. We recognize that false imprisonment is, in Maryland, a common law misdemeanor; hence, there is no statutorily prescribed maximum sentence. Therefore, deference to the legislative body is not a factor in our review. Whether the standard of review of a common law misdemeanor sentence, vis-'a-vis, a legislatively adopted sentence, is different is not before us. In any event, our decision would obviate the need for such a determination.

conduct for which the legislature has fixed a maximum penalty, a penalty that exceeds the statutory maximum suggests disproportionality, and we give that fact heavy weight in this case.

*Id.* at 100, 634 A.2d 1.

In *Stewart, supra,* 368 Md. at 33, 791 A.2d 143, the Court observed: "In *Thomas* we harmonized our conclusions concerning the breadth and depth of Eighth Amendment proportionality review with Justice Kennedy's concurrence in *Harmelin.*" There, the Court of Appeals noted that, "[i]n order to be unconstitutional, a punishment must be more than very harsh; it must be *grossly* disproportionate. This standard will not be easily met." *Thomas, supra,* 333 Md. at 96, 634 A.2d 1. (Emphasis in original). Thus, "challenges based on proportionality will be seriously entertained only where the punishment is truly egregious." *Id.* at 97, 634 A.2d 1; *see also Schlamp v. State,* 161 Md.App. 280, 298, 868 A.2d 914 (2005), *rev'd on other grounds,* 390 Md. 724, 891 A.2d 327 (2006).

The Court of Appeals has also considered disproportionality issues in *Simms v. State,* 288 Md. 712, 421 A.2d 957 (1980), and *Epps v. State,* 333 Md. 121, 634 A.2d 20 (1993).

In *Simms, supra,* 288 Md. at 719, 421 A.2d 957, the argument was advanced that, having been acquitted of assault with intent to rob, the sentence for which was ten years, Simms ought not have been sentenced to a term of 12 years for common law assault. In vacating the 12 year sentence for assault, the Court stated:

[W]hen a defendant is charged with a greater offense and a lesser included offense based on the same conduct, with jeopardy attaching to both charges at trial, and when the defendant is convicted only of the lesser included charge, he may not receive a sentence for that conviction which exceeds the maximum sentence which could have been imposed had he been convicted of the greater charge.

*Id.* at 724, 421 A.2d 957.

Here, appellant posits that, had he been charged with, and convicted of, kidnaping, he would have faced a sentence of only

30 years. Hence, he argues that, under the rule of *Simms,* the sentence for false imprisonment, a lesser included offense, should not exceed the maximum sentence for kidnaping, the greater offense. We reject that argument, for appellant was not charged with kidnaping; thus, jeopardy did not attach as to the greater offense.

Finally, appellant relies on *Epps, supra,* 333 Md. at 130, 634 A.2d 20, wherein the Court of Appeals, after conducting a proportionality review, vacated the 20 year sentence imposed upon Epps for assault on a correctional officer. There, the Court found a "suggestion of gross disproportionality" and then engaged in a comparative intra- and inter-jurisdictional analysis of the penalty. *Id.* at 129–30, 634 A.2d 20. Appellant here urges that we do likewise. For the reasons to be explained, we decline the invitation.

### Life Sentence

■ Appellant contends that the trial court's imposition of a life sentence for common-law false imprisonment "is disproportional in a way that is violative of the Eighth Amendment of the United States Constitution and Article 25 of the Maryland Declaration of Rights." We disagree because we believe it appropriate to focus on the actual sentence—ten years—and not the life sentence, of which, actuarially, a substantial portion was suspended.

At sentencing in the case *sub judice,* the court stated, in pertinent part:

For the first-degree assault, Count 1, I sentence you to ten years in the State penitentiary. And I give you credit for the 324 days that you've already spent toward that.

Count 2, the second-degree assault, merges into the first-degree assault.

But there was a separate offense, that false imprisonment, Count 12, and for that *I* sentence you to *life, suspend all but ten years.*

And that ten years is consecutive to the ten years I gave you in Count 1.

(Emphasis added).

Appellant was given a sentence of "life, suspend all but ten years," and *no period of probation was imposed. See* Md. Rule 4–346(a)(2005).[6] One sentenced to life in prison is not eligible for parole until after having served 15 years. *See* COMAR 12.08.01.17(7)(a).[7] Because only ten years of the life sentence is to be served, the balance having been suspended, the "life" sentence is effectively a ten-year, no parole sentence. Thus, should appellant be granted parole, his only future exposure is the remaining unserved portion of the ten-year term. If, on the other hand, appellant serves the entire unsuspended ten years, he will have no future risk of being retaken, as there is no probation to be violated.[8]

Therefore, in assessing the proportionality of the court's sentence for false imprisonment, we shall focus only on the ten-year sentence.

"False imprisonment, a common law offense, is the 'unlawful detention of another person against his [or her] will.' " *Marquardt v. State,* 164 Md.App. 95, 129, 882 A.2d 900, *cert. denied,* 390 Md. 91, 887 A.2d 656 (2005)(quoting *Midgett v. State,* 216 Md. 26, 39, 139 A.2d 209 (1958)).

---

**6.** Md. Rule 4–346(a) provides:

(a) **Manner of imposing.** When placing a defendant on probation, the court shall advise the defendant of the conditions and duration of probation and the possible consequences of a violation of any of the conditions. The court also shall file and furnish to the defendant a written order stating the conditions and duration of probation.

**7.** COMAR 12.08.01.17(7)(a) provides:

(7) Sentence of Life Imprisonment.

(a) A prisoner sentenced to life imprisonment is eligible for parole after serving 15 years or the equivalent of 15 years when considering the allowance for any diminution credits awarded by the Division of Correction in accordance with Correctional Services Article, Title 3, Subtitle 7, and Title 11, Subtitle 5, Annotated Code of Maryland.

**8.** Appellant is still eligible for his "good time" credits. *See* Md.Code Ann., Crim. Proc. § 6–218 (2001 & 2005 Supp.).

> In the case of common law crimes, the only restrictions on sentence are that it be within the reasonable discretion of the trial judge and not cruel and unusual punishment. In the imposition of sentence, the court must not only consider the accused, but in cases of serious import, the example to others of like inclination.

*See Lynch v. State,* 2 Md.App. 546, 564, 236 A.2d 45 (1967); *see Schlamp, supra,* 161 Md.App. at 297, 868 A.2d 914.

"In Maryland, a sentencing judge is 'vested with virtually boundless discretion.' " *Kang v. State,* 163 Md.App. 22, 46, 877 A.2d 173, *cert. granted,* 388 Md. 673, 882 A.2d 286 (2005), *aff'd on other grounds,* 393 Md. 97, 899 A.2d 843 (2006) (quoting *State v. Dopkowski,* 325 Md. 671, 679, 602 A.2d 1185 (1992)).

> The judge is accorded this broad latitude to best accomplish the objectives of sentencing—punishment, deterrence and rehabilitation. A sentence should be premised upon both the facts and circumstances of the crime itself and the background of the individual convicted of committing the crime.

*Dopkowski, supra,* 325 Md. at 679, 602 A.2d 1185 (citations omitted).

Here, the court, in sentencing appellant, clearly articulated its rationale for imposing a sentence above the guidelines (probation to one year) when it stated:

> When you commit an act against another person in our society like you did, against her, that is not just a transgression against her. And that is what criminal law is about, an act against society as a whole.
>
> If you don't learn to treat other people the way you would want to be treated yourself, then you are a dangerous person.
>
> And I've listened. I've listened to you. You said this wouldn't have happened if she had not . . . been using drugs. It wouldn't have happened if you had conducted yourself as a good citizen and followed that.

All of those other things, I have all the faith in the world that your jury listened to that, and they totally rejected all those other things, but that they didn't.

And it is to her benefit that she has forgiven you. I'm happy that she is able to reach that conclusion. That speaks well of her.

But I don't think the society as a whole excuses that.

\* \* \*

I want this to be made part of the sentencing investigation that goes with the commitment.

Madam Clerk, the photographs are to go to the parole board. I have asked them to take a look at them before they decide what they think is appropriate.

If he loved her, I would hate to see what would happen if he hated somebody.

Since we find no suggestion of gross disproportionality, we need not undertake an *Epps* proportionality review. As we consider the facts before us, and the court's broad discretion in sentencing matters, we hold that the imposition of a ten-year sentence for false imprisonment is not so disproportionate as to constitute cruel and unusual punishment.[9]

■ We note that the challenged sentences in *Simms, Thomas, Epps,* and *Stewart* were flat sentences—that is, no portion of any of those sentences was suspended. For that

---

9. Our decision is in accord with other courts that have been asked to review the proportionality of a suspended sentence. *See Williams v. State,* 936 So.2d 387, 2006 WL 696515 (Miss.App.2006)(Twenty-five year sentence, for selling cocaine, of which five years were suspended, was within the statutory guidelines and thus not grossly disproportionate to the crime committed.); *State v. Wardell,* 329 Mont. 9, 122 P.3d 443, 448 (2005)(Argument that twenty year sentence, for being a persistent felony offender, of which all twenty years were suspended, was within statutory parameters and therefore was not properly before the court); and *Commonwealth v. Tart,* 408 Mass. 249, 557 N.E.2d 1123, 1135 (1990)(Imposition of a thirty-day jail sentence, for landing raw fish for the purpose of sale without a state commercial fisherman permit, of which twenty-three days were suspended, is not so disproportionate as to constitute cruel and unusual punishment.)

**392**

reason, among others, we conclude that those cases are of no comfort to appellant. Accordingly, we hold that, where a disproportionality review is sought, the focus must be on the sentence to be actually served, and not necessarily on the greater suspended portion. This is particularly so where, as here, a defendant suffers no additional exposure from a future violation of conditions of probation or parole.

### 2. Whether there was sufficient evidence to support appellant's conviction for first degree assault.

 Appellant argues that the trial court erred in denying defense motions for judgment of acquittal for the first degree assault charge. Specifically, he contends that "[t]he State failed to produce evidence from which the jury could have found that Ms. Drayton suffered serious injury as that term is defined by statute." We disagree.

Since the record indicates that appellant's motions for judgment of acquittal, both at the close of the State's case and at the close of all of the evidence, were argued with particularity, we shall review, not the propriety of the trial court's denial, but the sufficiency of the evidence supporting the first degree assault conviction. *See Whiting v. State,* 160 Md.App. 285, 308, 863 A.2d 1017 (2004), *aff'd,* 389 Md. 334, 885 A.2d 785 (2005); Md. Rule 4–324.

 In making our review, we must determine "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Chilcoat v. State,* 155 Md.App. 394, 401, 843 A.2d 240 (2004). " 'Weighing the credibility of witnesses and resolving any conflicts in the evidence are tasks proper for the fact finder.' " *Id.* at 401–02, 843 A.2d 240 (quoting *State v. Stanley,* 351 Md. 733, 750, 720 A.2d 323 (1998)).

Md.Code Ann., Crim. Law ("CL") § 3–202(a)(1)(2002) defines assault in the first degree and provides that "[a] person may not intentionally cause *or attempt to cause* serious physi-

cal injury to another." (emphasis added). "Serious physical injury" is defined in CL § 3–201(d) as an injury that:

(1) creates a substantial risk of death; or

(2) causes permanent or protracted serious:

(i) disfigurement;

(ii) loss of the function of any bodily member or organ; or

(iii) impairment of the function of any bodily member or organ.

In *Chilcoat, supra,* 155 Md.App. at 404, 843 A.2d 240, we upheld the sufficiency of the evidence to support a first degree assault conviction based upon testimony that Chilcoat "grabbed a beer stein and hit [the victim] in the head four or five times," photographs of the victim's injuries, photographs of the beer stein, and the victim's medical records. We noted:

the statute [present CL § 3–202(a)(1) ] prohibits not only causing, but attempting to cause, a serious physical injury to another. Although the State must prove that an individual had a specific intent to cause a serious physical injury, a jury may infer the necessary intent from an individual's conduct and the surrounding circumstances, whether or not the victim suffers such an injury. Also, the jury may "infer that 'one intends the natural and probable consequences of his act.' "

*Id.* at 403, 843 A.2d 240. (citations omitted). We also stated that, "[i]n determining whether an injury creates a substantial risk of death, the focus is on the injury, not how well the victim responded to medical treatment." *Id.* at 402–03, 843 A.2d 240.

In the case *sub judice,* appellant, while holding Drayton to the floor, punched her repeatedly in her face with his right hand while he choked her with his left. Drayton lost consciousness during the beating and suffered bilateral fractures to her jaw, a broken nose, a dislocated chin, multiple hematomas to her face, and a swollen hand. Moreover, the jury heard testimony from several witnesses who described her

appearance soon after the beating.[10] Photographs of Drayton's injuries, as well as her medical records, were admitted into evidence.

We hold, therefore, that the evidence, viewed in the light most favorable to the State, was sufficient for the jury to infer that appellant intended to cause serious physical injury to Drayton.

**JUDGMENTS OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, AFFIRMED; COSTS ASSESSED TO APPELLANT.**

---

**10.** Drayton's friend and neighbor, DeEtta Johnson, was hysterical upon seeing Drayton, whom she described as looking like "death."