916 A.2d 1008

**Robin Tyronne CATHCART**

v.

**STATE of Maryland.**

**No. 64, Sept. Term, 2006.**

Court of Appeals of Maryland.

Feb. 9, 2007.

Geraldine K. Sweeney, Asst. Public Defender (Nancy S. Forster, Public Defender, on brief), for petitioner.

Sarah Page Pritzlaff, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), for respondent.

Argued before BELL, C.J., RAKER,*WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

WILNER, J.

Upon evidence that he had brutally beaten Antoinette Drayton, his former girlfriend and the mother of his infant daughter, and thereafter precluded her, for over an hour, from leaving her apartment to seek medical assistance, petitioner Robin Tyronne Cathcart was convicted by a jury in the Circuit Court for Prince George's County of first degree assault and false imprisonment. For the first degree assault, the court imposed a sentence of ten years. For the common law offense of false imprisonment, the court sentenced Cathcart to life imprisonment, consecutive to the ten year sentence for assault, with all but ten years suspended. No period of probation was imposed with respect to the suspended part of the life

---

* Wilner, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

sentence. The single question presented to us is whether the sentence imposed on the false imprisonment conviction is illegal.

The events giving rise to this case took place in the early morning hours of December 28, 2003. We need not recount in detail the dreadful ordeal to which Ms. Drayton was subjected by Cathcart. The couple had lived together for a few months in the Fall of 2003, but when, in mid-December, Cathcart took up with another woman, Ms. Drayton told him that he could no longer stay at her apartment. They did spend Christmas night together, however, but when Cathcart left, he took the keys to the apartment, and Ms. Drayton spent the next two days with a neighbor.

Around 1:00 a.m. on the 28th, Cathcart met Ms. Drayton at her apartment, threatened her, entered the apartment, and, during the course of the next hour or so, choked her and beat her severely, breaking her jaw in several places and pummeling her face to the point that one eye was shut completely and she could barely see. Her parents, who saw her later, were unable to recognize her other than by her clothes.[1] When the prolonged assault ended, Ms. Drayton pleaded with Cathcart to let her leave to get medical help, but he refused even to let her get dressed, much less to leave, and kept her hostage for another hour. Finally, around 3:30 a.m., he led her to the parking lot and, after holding her there for a while longer, departed, and left her to fend for herself. Unable to see very well, she made her way across the parking lot to her friend's apartment by feeling the parked cars. Drayton was taken initially to Southern Maryland Hospital Center, but her injuries were too serious for treatment there, so she was transferred to Prince George's Hospital Trauma Unit, where she underwent surgery and was treated for a variety of head and facial injuries.

---

1. There was evidence that Cathcart raped and sexually abused Ms. Drayton as well, although the jury acquitted him of the sexual offense charges.

In imposing sentence, the court asked that the photographs of Ms. Drayton's injuries be sent to the Maryland Parole Commission for its future consideration. Cathcart appealed, arguing that, under the circumstances of the case, imposition of a life sentence for the common law offense of false imprisonment was unconstitutionally disproportionate and therefore illegal. Noting that the maximum sentence in Maryland for kidnapping—an aggravated form of false imprisonment—was only thirty years and that the permissible sentence for false imprisonment in other States ranged from six months to ten years, he complained that a life sentence for merely holding Ms. Drayton in her apartment for up to three hours was grossly disproportionate and therefore cruel and unusual.

Given the fact that no period of probation was imposed with respect to the suspended part of the life sentence and that Cathcart could therefore never serve more than ten years on that sentence, the Court of Special Appeals concluded that the sentence was effectively one of ten years, rather than life, and that a sentence of ten years for false imprisonment, under the circumstances, was not unconstitutionally disproportionate. It therefore affirmed the judgment. *Cathcart v. State*, 169 Md. App. 379, 901 A.2d 262 (2006).

In the petition for *certiorari* that we granted and in his brief before us, Cathcart continues to maintain that a sentence of life imprisonment, with all but ten years suspended but with no probation, constitutes an illegal sentence, but the nature of his complaint is somewhat different. Acknowledging that, in the absence of a period of probation attached to the suspended part of the sentence, there will be no occasion for the suspended part of the sentence ever to be executed and that, as a result, he will never have to serve more than ten years on that sentence, he complains that the effect of the sentence, as articulated and when considered together with the ten-year sentence for assault, is to preclude any parole consideration for the entire duration of the twenty years.[2] That, he argues,

---

2. Cathcart points out, without challenge by the State, that, because the term of confinement includes a life sentence, parole eligibility is calcu-

is illegal for two reasons: first, it is cruel and unusual to impose a non-parolable sentence of fifteen years for false imprisonment; and second, by precluding the prospect of parole in the absence of any authorizing statute, the court has effectively intruded upon the discretion of the Parole Commission, an Executive Branch agency vested by law with authority over granting or denying parole, and has thereby exercised an Executive function in violation of the separation of powers principle enunciated in Article 8 of the Maryland Declaration of Rights.

We do not agree that the sentences imposed on Cathcart were in any way illegal. The sentence imposed on the assault conviction was well within the permissible statutory range, and, as we shall explain, the sentence imposed for false imprisonment, despite its wording, was not a life sentence and has no attribute or collateral consequence of a life sentence. What the court has effectively done is to impose two ten-year sentences, one consecutive to the other, and there is nothing unlawful in its doing so.

Cathcart does not challenge the ten-year sentence imposed for first degree assault, and, indeed, he has no basis for such a challenge. Assault in the first degree is a felony that carries a maximum sentence of 25 years. *See* Maryland Code, § 3–

---

lated on each sentence separately and then aggregated. Because first degree assault is a crime of violence, as defined in Maryland Code, § 14–101(a)(17) of the Criminal Law Article, he must serve five years before he becomes eligible for parole on that sentence (the greater of one-half of the sentence imposed for the violent crime or one-fourth of the aggregate sentence). *See* Maryland Code, § 7–301(c)(1)(i) of the Correctional Services Article (CS). If the sentence imposed for false imprisonment is treated as a life sentence, even though all but 10 years is suspended, he would, in his estimation, have to serve at least 15 years before he becomes eligible for parole on that sentence. *See* CS § 7–301(d)(1). That alone would make the entire part of the false imprisonment sentence ordered executed by the court immune from parole. Worse, from his perspective, when the five year minimum on the assault is aggregated with the fifteen year minimum on the false imprisonment, Cathcart maintains that, under the structure used by the Circuit Court, he would not be eligible for parole for twenty years and that, as a result, the entire twenty-year aggregate sentence he received would be a non-parolable one.

202(b) of the Criminal Law Article. The focus is on the sentence imposed for false imprisonment.

We have on several occasions, most recently in *Benedict v. State,* 377 Md. 1, 831 A.2d 1060 (2003) and *Moats v. Scott,* 358 Md. 593, 751 A.2d 462 (2000), set forth the various options available to the court in sentencing a defendant for a crime that carries a prison sentence:

(1) The court may impose a sentence up to the maximum term allowed and, by stating no contrary ruling, implicitly direct that the entire sentence be executed. In that event, the defendant will be delivered to the appropriate correctional authority to commence serving the entire sentence, subject to an earlier release only through parole, gubernatorial pardon, or, upon the accumulation of statutory diminution credits against the sentence, on mandatory supervision.

(2) Under what is now § 6–221 of the Criminal Procedure Article (CP), the court "may suspend the imposition or execution of sentence and place the defendant on probation on the conditions that the court considers proper." That section provides two options. The court may defer the actual imposition of sentence in favor of probation or it may impose a sentence and suspend the execution of all of it in favor of the probation. In either event, so long as the probation is not revoked, the defendant will not be incarcerated at all. If the probation is subsequently revoked, the court may then proceed either to impose the sentence that it had deferred or direct execution of all or any part of the sentence that it had previously imposed but suspended.

(3) Under what is now CP § 6–222, the court may impose what is commonly referred to as a split sentence. It may "(1) impose a sentence for a specified time and provide that a lesser time be served in confinement; (2) suspend the remainder of the sentence; *and* (3) order probation for a time [permitted by that statute]." (Emphasis added). If the court chooses that approach, it must impose the full sentence it intends to impose. *See Hanson v. Hughes,* 52 Md.App. 246, 253, 447 A.2d 892, 895 (1982), *aff'd for reasons set forth by*

*Court of Special Appeals,* 294 Md. 599, 451 A.2d 664 (1982) ("The court must impose the full sentence; it may then suspend execution of a part of it.").

(4) Finally, under what is now CP § 6–225(d), the court may impose a sentence of custodial confinement or imprisonment as a condition of probation.

The split sentence option described in ¶ (3) above may be used in connection with a life sentence, *i.e.,* the court may impose a life sentence (assuming a life sentence is permissible for the crime) and suspend all but a fixed part of it and direct execution of only that fixed part. *See State v. Wooten,* 277 Md. 114, 352 A.2d 829 (1976); *Williamson v. State,* 284 Md. 212, 395 A.2d 496 (1979); *Hanson v. Hughes, supra,* 52 Md.App. at 253–54, 447 A.2d at 895–96. If a court chooses to use that approach, however, it must comply with the requirements of CP § 6–222, one of which is that there must be a period of probation attached to the suspended part of the sentence.

In *State ex rel. Sonner v. Shearin,* 272 Md. 502, 325 A.2d 573 (1974), this Court declared that "in the absence of statutory authority a court does not possess any power, after sentence has been pronounced, to suspend the execution of its judgment so as to relieve an accused, either in whole or in part, from suffering the sentence imposed," that, pursuant to Art. III, § 60 of the Maryland Constitution, the General Assembly has the power, by "suitable general enactment," to provide for the suspension of sentences in criminal cases, and that any suspension of execution of a sentence by a court, in whole or in part, must be in conformance with an authorizing statute. *Id.* at 512–13 and 518–19, 325 A.2d at 579 and 582.

Shearin involved a situation in which a judge suspended three years of a five year sentence imposed under a statute that provided for a mandatory minimum five year sentence. This Court held he had no authority to do so—that, acting under Art. III, § 60, the Legislature could determine the circumstances under which execution of a sentence could, or could not, be suspended, and that if the Legislature chose to

declare that a particular sentence was not subject to suspension, the court had no authority to suspend it. We are not dealing here with a mandatory minimum sentence, of course, so some of the language used in the *Shearin* Opinion is inapposite. What is relevant from *Shearin* is the principle that, because the Maryland Constitution has vested in the General Assembly the power to enact legislation providing for the suspension of sentences, if the Legislature, pursuant to that authority, enacts such legislation setting conditions or limitations on the suspension of sentences, courts are not authorized to ignore or act inconsistently with those conditions or limitations. *See also State v. Fisher*, 204 Md. 307, 104 A.2d 403 (1954).

The issue of whether, as a matter of statutory construction, probation is required when the court imposes a life sentence but suspends part of it arose in *State v. Wooten*, 27 Md.App. 434, 340 A.2d 308 (1975). The defendant was convicted of first degree murder, for which the law, at the time, required a sentence of life imprisonment. The court imposed such a sentence, but then suspended execution of all but eight years of it. It was not entirely clear whether the court imposed a period of probation; there was some debate about it in the trial court, although the Court of Special Appeals assumed that no probation had been imposed. The State appealed the sentence, contending that, because life imprisonment was mandatory, the trial court had no authority to suspend any part of it, and that the sentence was therefore illegal. The principal holding of the Court of Special Appeals was that the predecessor statutes to current CP §§ 6–221 and 6–222, permitting the execution of prison sentences to be suspended in whole or in part, were applicable to the life sentence and permitted the split sentence suspension, a conclusion that we affirmed in *State v. Wooten, supra*, 277 Md. 114, 352 A.2d 829.

In the Court of Special Appeals, the State made the ancillary argument that, because the statute authorizing a split sentence required a period of probation, the sentence was also illegal because it did not contain one. The Court of Special Appeals rejected that argument; it declined to read the

statute as requiring a probation but, focusing on the word "may" in the statute, regarded the ordering of probation as discretionary. *State v. Wooten, supra,* 27 Md.App. at 442, 340 A.2d at 313. Because the State did not press that argument in this Court, we had no occasion to address it and did not, in fact, address it. We agreed with the intermediate appellate court that the statute authorizing a split sentence applied to the life sentence required for first degree murder and affirmed its judgment solely on that basis. *See State v. Wooten, supra,* 277 Md. at 119, 352 A.2d at 833.

We do not agree with the ancillary conclusion of the Court of Special Appeals in its *Wooten* opinion that, when the trial court acts under what is now CP § 6–222, imposition of a probationary period is entirely discretionary. Absent conditioning the suspension on a period of probation, the sentence would no longer be a split sentence, for without such a provision, there would be no ability for the court ever to direct execution of the suspended part of the sentence. No matter what the defendant may thereafter do, he or she could never be incarcerated, under that sentence, for a longer period of time than provided for by the unsuspended part. Both parties acknowledge that plain, inescapable fact, as, of course, did the Court of Special Appeals in this case. If, under the sentence as articulated, and we presume as intended, Cathcart can never serve more than ten years on the false imprisonment conviction, the sentence imposed on that conviction cannot reasonably be regarded as a sentence of life imprisonment.

Statutes similar to CP § 6–222 are common, and courts in other States have also been faced with the effect of a sentence purportedly imposed under such a statute that did not contain an effective period of probation. Most of the courts faced with that situation have taken the position we take here, that a split sentence statute requires a period of probation. *See Madden v. State,* 864 So.2d 395, 398 (Ala.Crim.App.2002); *Moore v. State,* 871 So.2d 106 (Ala.Crim.App.2003); *Christensen v. State,* 844 P.2d 557 (Alaska App.1993); *Oster v. Municipal Court,* 45 Cal.2d 134, 287 P.2d 755, 759 (1955); *People v.*

*Superior Court (Roam),* 69 Cal.App.4th 1220, 82 Cal.Rptr.2d 119 (1999); *State v. Willis,* 663 So.2d 392 (La.App. 3 Cir.1995); and *cf. United States v. Lilly,* 901 F.Supp. 25, 29 (D.Mass. 1995), *aff'd,* 80 F.3d 24 (1st Cir.1996). In most of those cases, the appellate court entered an order of remand so the trial court could enter a proper probation order and thereby comply with the statutory requirement. We shall not choose that route.

Failure to impose a period of probation does not necessarily make the sentence illegal but simply precludes it from having the status of a split sentence under CP § 6–222. Because the effect of the omission is to limit the period of incarceration to the unsuspended part of the sentence, that becomes, in law, the effective sentence. If the court has chosen not to impose a period of probation and thereby limited the period of incarceration to the unsuspended portion of the sentence, the effect of remanding the case for it to do so would be tantamount to allowing it to increase the sentence from that fixed number of years to a life sentence, and our jurisprudence does not allow for that. *See* Maryland Code, § 12–702(b) of the Cts. & Jud. Proc. Article; *Dixon v. State,* 364 Md. 209, 772 A.2d 283 (2001); *Davis v. State,* 312 Md. 172, 539 A.2d 218 (1988); *Jones v. State,* 307 Md. 449, 514 A.2d 1219 (1986); *Coley v. State,* 76 Md.App. 731, 548 A.2d 161 (1988).

Because the effective sentence imposed on the false imprisonment conviction was ten years, it has none of the attributes of a life sentence, for parole eligibility or any other purpose. It therefore presents none of the issues complained of by Cathcart. As a housekeeping measure, however, the judgment as recorded on the docket should be amended to reflect the true nature of the sentence. We shall vacate the judgment of the Court of Special Appeals and direct that the case be remanded to the Circuit Court for Prince George's County for that purpose.

JUDGMENT OF COURT OF SPECIAL APPEALS VACATED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REMAND CASE TO CIRCUIT

COURT FOR PRINCE GEORGE'S COUNTY WITH INSTRUCTIONS TO AMEND SENTENCE IMPOSED ON FALSE IMPRISONMENT CONVICTION TO IMPRISONMENT FOR TEN YEARS, CONSECUTIVE TO SENTENCE IMPOSED ON FIRST DEGREE ASSAULT CONVICTION; COSTS IN THIS COURT AND IN COURT OF SPECIAL APPEALS TO BE PAID BY PRINCE GEORGE'S COUNTY.