*State of Maryland v. Anthony Allen Crawley*, No. 65, September Term, 2016.  Opinion by Barbera, C.J.

**CRIMINAL LAW — PLEA AGREEMENT — CORRECTING AN ILLEGAL SENTENCE** — Respondent, Anthony Allen Crawley, entered into a plea agreement for first degree murder and, in accordance with the agreement, was sentenced to life, suspend all but 35 years.  Because the sentence did not include a period of probation, Crawley's sentence would be converted to a 35-year term-of-years sentence—an illegal sentence that violates the statutorily-prescribed minimum sentence of life imprisonment for first degree murder.  *See Greco v. State*, 427 Md. 477, 513 (2012).  A period of probation was an implied term of the plea agreement, and, therefore, the circuit court properly added a period of probation to correct the illegality and effectuate the originally-intended split sentence.

Circuit Court for Prince George's County
Case No. CT 97-0647B
Argued:  March 3, 2017

IN THE COURT OF APPEALS
OF MARYLAND

No. 65

September Term, 2016

_____

STATE OF MARYLAND

v.

ANTHONY ALLEN CRAWLEY

_____

Barbera, C.J.,
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

_____

Opinion by Barbera, C.J.

_____

Filed:  August 2, 2017

All forms of first degree murder carry a statutorily-mandated life sentence. *See* Md. Code Ann., Crim. Law § 2-201(b) (2002, 2012 Repl. Vol., 2016 Supp.).[1] Although a life sentence must be imposed, the sentencing court retains the discretion to suspend any portion of it so long as the suspended portion carries with it a period of probation. Md. Code Ann., Crim. Proc. § 6-222 (2001, 2008 Repl. Vol., 2016 Supp.);[2] *Cathcart v. State*, 397 Md. 320, 327 (2007). The absence of a period of probation has the effect of removing the portion of the life sentence that has been suspended, leaving standing only the term-of-years portion of the sentence. *See Cathcart*, 397 Md. at 330. A term-of-years sentence for first degree murder is an illegal sentence that must be corrected by adding a period of probation. *Greco v. State*, 427 Md. 477, 513 (2012).

---

[1] Crim. Law § 2-201(b) provides: "A person who commits a murder in the first degree is guilty of a felony and on conviction shall be sentenced to . . . imprisonment for life." Section 2-201 was derived, without substantive change, from Md. Code Ann., Article 27, § 412(b) (1996 Repl. Vol.), which was in place at the time Crawley entered into his plea agreement.

[2] Crim. Proc. § 6-222 provides, in pertinent part, that:

> (a) *Limits on probation after judgment.* — A circuit court or the District Court may:
> > (1) impose a sentence for a specified time and provide that a lesser time be served in confinement;
> > (2) suspend the remainder of the sentence; and
> > (3)(i) order probation for a time longer than the sentence but, subject to subsections (b) and (c) of this section, not longer than:
> > > 1. 5 years if the probation is ordered by a circuit court[.]

Section 6-222 was derived, without substantive change, from Md. Code Ann., Article 27, § 641A (1996 Repl. Vol.), which was in place at the time Crawley entered into his plea agreement. We also note that this section has recently been amended, with the amendment to take effect in October 2017. The changes do not affect the substance of the statute as it pertains to this case.

The case before us presents the question of whether a sentence for first degree felony murder containing such an illegality must be corrected as described in *Greco* when the illegal sentence was imposed pursuant to a plea agreement. For the reasons that follow, we hold that the rule established by *Greco* applies regardless of whether the sentence was the product of a plea agreement or upon a conviction following trial.

I

*The crime, the plea agreement, and the sentencing*

This case has its genesis in the 1997 armed robbery and murder of a District of Columbia policeman, Officer Oliver Smith, who was off duty at the time. The subsequent investigation quickly led the police to conclude that Respondent, Anthony Allen Crawley, and two co-actors, Antwaun Brown and Donovan Strickland, were involved in the commission of the crime. Crawley was charged with first degree felony murder and armed robbery. In exchange for his agreement to testify truthfully against Brown and Strickland, Crawley agreed to plead guilty to both charges.

The plea hearing was held in September 1997. At the outset of that hearing, counsel for Crawley made the following request: "We are asking the Court to bind itself to an agreement reached between the State and the Defense that the sentence in this case would be life, which the Court would be required to impose, but that all but thirty-five years would be suspended on the felony murder charge." The plea agreement, which was read at the hearing, provided in pertinent part:

> The State, the Court, and the Defendant agree that the Defendant shall be sentenced after the conclusion of the trials of codefendants Antwaun Brown and Donovan Strickland, to life suspend all but 35 years for the aforesaid

2

felony murder charge. The underlying charge of robbery with a deadly weapon will merge, by operation of law, with the felony murder charge at sentencing.

The plea agreement did not mention probation, and the court did not utter the term "probation" during the hearing, except in the course of a somewhat lengthy colloquy with Crawley concerning the impact that his guilty plea in the present case could have on his then-current status in the criminal justice system. Even then, the court's reference to probation was in asking Crawley whether he was "on any kind of parole or probation at this point in time." Neither the State nor defense counsel referred to probation in connection with the sentence presented by the plea, and neither brought up the necessity to have a period of probation attached to the suspended portion of the life sentence.

At the conclusion of the hearing, the court declared its satisfaction that the plea was "knowingly, voluntarily and intelligently made," and that defense counsel had discussed the plea in detail with Crawley and, with Crawley's consent, his family. The court then formally accepted the plea agreement.

Sentencing took place a little more than a year later, on October 16, 1998. At the hearing, the court reiterated the agreement in imposing the sentence:

> The sentence of this Court is, as to Count One, first degree felony murder, that you be sentenced to life in prison. Pursuant to the plea agreement, all but 35 years is suspended, and that sentence is to commence as of February 27th, 1997.
>
> As to Count Two, robbery with a deadly weapon, the sentence is that the Court rules that no sentence can be imposed because under felony murder robbery with a deadly weapon merges with Count Number One.

3

No mention of probation was made by anyone at any time during the hearing. The commitment record indicates a sentence of "life, all but 35 years suspended," with the box for the probation period left blank.

In 2011, Crawley initiated the present challenge to the legality of his sentence. Before addressing that claim, we pause to review the then-evolving jurisprudential landscape in Maryland that bears directly on the claim he makes.

II

*Cathcart v. State, Greco v. State, and their effect on this case*

Cathcart v. State

On February 9, 2007, this Court decided *Cathcart*, 397 Md. at 320. The defendant Cathcart was convicted by a jury of first degree assault and common law false imprisonment. *Id.* at 322. He was sentenced to ten years in prison on the assault conviction and to life imprisonment with all but ten years suspended on the false imprisonment conviction. *Id.* Cathcart appealed and challenged the life sentence for false imprisonment as disproportionately excessive, in violation of the Eighth Amendment to the Constitution of the United States and the Constitution of Maryland. *Cathcart v. State*, 169 Md. App. 379, 388 (2006). The Court of Special Appeals, noting in part that "*no period of probation was imposed*," concluded that, "[i]f . . . appellant serves the entire unsuspended ten years, he will have no future risk of being retaken, as there is no probation to be violated." *Id.* at 389. Focusing on what was effectively a ten-year sentence, the Court of Special Appeals readily concluded that the sentence was not unconstitutionally disproportionate to the crime. *Id.* at 391.

4

Cathcart sought and we granted a writ of certiorari to review his challenge to what he maintained was an illegal sentence. Before us, Cathcart advanced an argument different from his argument in the Court of Special Appeals. We summarized the new argument this way:

> Acknowledging that, in the absence of a period of probation attached to the suspended part of the sentence, there will be no occasion for the suspended part of the sentence ever to be executed and that, as a result, he will never have to serve more than ten years on that sentence, [Cathcart] complains that the effect of the sentence [for common law false imprisonment] as articulated [by the Court of Special Appeals to be ten years] and when considered together with the ten-year sentence for assault, is to preclude any parole consideration for the entire duration of the twenty years.

*Cathcart*, 397 Md. at 324. To that argument, we responded:

> We do not agree that the sentences imposed on Cathcart were in any way illegal. The sentence imposed on the assault conviction was well within the permissible statutory range, and, as we shall explain, the sentence imposed for false imprisonment, despite its wording, was not a life sentence and has no attribute or collateral consequence of a life sentence. What the court has effectively done is to impose two ten-year sentences, one consecutive to the other, and there is nothing unlawful in its doing so.

*Id.* at 325.

> Our conclusion was grounded in three sentencing principles:

> "[1] in the absence of statutory authority a court does not possess any power, after sentence has been pronounced, to suspend the execution of its judgment so as to relieve an accused, either in whole or in part, from suffering the sentence imposed"[; 2] that, pursuant to Art. III, § 60 of the Maryland Constitution, the General Assembly has the power, by "suitable general enactment," to provide for the suspension of sentences in criminal cases[;] and [3] that any suspension of execution of a sentence by a court, in whole or in part, must be in conformance with an authorizing statute.

*Cathcart*, 397 Md. at 327 (citing *State ex rel. Sonner v. Shearin*, 272 Md. 502, 512-13, 518-19 (1974)).

For purposes of resolving the sentencing issue presented in *Cathcart*, we noted:

> What is relevant from *Shearin* is the principle that, because the Maryland Constitution has vested in the General Assembly the power to enact legislation providing for the suspension of sentences, if the Legislature, pursuant to that authority, enacts such legislation setting conditions or limitations on the suspension of sentences, courts are not authorized to ignore or act inconsistently with those conditions or limitations.

*Cathcart*, 397 Md. at 328. We recognized nonetheless that, in Cathcart's case, because there was not a mandatory minimum sentence for the false imprisonment conviction, the court's failure to impose a period of probation did not render the sentence illegal, "but simply precludes it from having the status of a split sentence." *Id.* at 330. Important to the case at bar, we addressed the relevance of Crim. Proc. § 6-222 to the analysis. We explained that, "[u]nder what is now CP § 6-222," courts have the authority to "impose what is commonly referred to as a split sentence." *Cathcart*, 397 Md. at 326. "If a court chooses to use that approach, however, it must comply with the requirements of CP § 6-222, one of which is that there must be a period of probation attached to the suspended part of the sentence." *Cathcart*, 397 Md. at 327. We held that, "[b]ecause the effect of the omission is to limit the period of incarceration to the unsuspended part of the sentence, that becomes, in law, the effective sentence." *Id.* at 330.

Greco v. State

Five years after *Cathcart*, we decided *Greco*. Greco was tried and convicted by a jury of first degree premeditated murder, felony murder, and first degree rape. *Greco*, 427 Md. at 485. The circuit court sentenced Greco to concurrent terms of life imprisonment for the premeditated murder and rape, with all but 50 years suspended; the court did not

impose a period of probation. *Id.* at 486. No separate sentence was imposed for the felony murder conviction. *Id.*

We determined that "[Greco's] previously imposed sentence for first degree premeditated murder of life, suspend all but fifty years, was converted by operation of law into a term-of-years sentence of fifty years imprisonment." *Id.* at 513. Such conversion, as we had said in *Cathcart*, "does not *necessarily* make the sentence illegal but simply precludes it from having the status of a split sentence" under Crim. Proc. § 6-222. *Greco*, 427 Md. at 505 (emphasis added) (citation omitted). But, unlike the convictions at issue in *Cathcart*, Greco's conviction for premeditated murder carried a statutorily-prescribed penalty of life imprisonment, rendering the resultant 50-year sentence illegal. *See id.* at 505-07, 513.

We further explained in *Greco* that correcting a split sentence by tacking on a probationary period was not an abuse of the authority granted by Maryland Rule 4-345(a). We noted that the courts have revisory power, pursuant to Rule 4-345(a), to correct illegal sentences and, if necessary, can accomplish the correction by increasing the sentence. *Greco*, 427 Md. at 508. We held:

> In sum, Petitioner's previously imposed sentence for first degree premeditated murder of life, suspend all but fifty years, was converted by operation of law into a term-of-years sentence of fifty years imprisonment. That converted sentence was not authorized by statute; therefore, it was illegal. On remand, the Circuit Court is limited by the maximum legal sentence that could have been imposed, with the illegality removed. That is, the Circuit Court must impose a sentence of life imprisonment, all but fifty years suspended, to be followed by some period of probation.

*Id.* at 513.

7

III

*Subsequent proceedings in the present case*

*Crawley's Motion to Correct an Illegal Sentence*

In May 2011, after *Cathcart* but before *Greco* was issued, Crawley, representing himself, filed a "Memorandum of Law" requesting the circuit court to "Revise Judgment of an Illegal Sentence." Crawley asserted that the trial court's failure to impose a period of probation precluded the sentence from having the status of a split sentence. Crawley argued that, under *Cathcart*, the omission of a period of probation rendered his sentence a fixed term-of-years sentence of 35 years. The circuit court treated Crawley's pleading as a motion to correct an illegal sentence.

By the time the motion came on for a hearing, *Greco* had been decided. The circuit court ruled that, pursuant to *Greco*, Crawley's sentence was an illegal sentence and a new sentence was necessary to correct the illegality. A resentencing hearing was held on April 26, 2013. The circuit court explained that, although his "personal druthers would be stick with the binding plea agreement, [because] that's what the parties agreed to," he could not because the sentence was illegal. Over defense objection, the court vacated the then-extant sentence and resentenced Crawley to life imprisonment, all but 35 years suspended, with

8

four years of supervised probation.[3]  Crawley, satisfied with the 35-year portion of the sentence, but displeased with the addition of the period of probation, appealed that decision to the Court of Special Appeals.

*The decision of the Court of Special Appeals and Petition for Writ of Certiorari*

A majority of the three-judge panel of the Court of Special Appeals reversed the judgment of the circuit court in an unreported opinion.  *Crawley v. State*, No. 467, Sept. Term, 2013, slip op. at 20-21 (Md. Ct. Spec. App. Aug. 8, 2016).  The panel majority agreed with Crawley that the sentence, as modified by the circuit court, was itself illegal because it added four years of probation not included as a term of the plea agreement.  *Id.*

---

[3] The court stated:

> Life, suspend all but 35 years.  Give him credit from February 27, 1997, which Madam Clerk has put it in the computer, translates to 16 years, 62 days.  Give him credit for that.
>
> The Court will place him on a period of probation.  I can go up to five years.  But in recognition that you have done extremely well, while balancing the interest of society at the same time, the Court will place you on a period of four years probation, with the special conditions as follows.
>
> As to Count 1, this is all to Count 1 . . . .
>
> Special conditions.  I am required by law for you to provide a DNA sample, which I will order that that be done.
>
> Special conditions are: during that period, you are to submit and pay for random urinalysis as directed by your supervising agent, and submit to any alcohol, drug evaluation testing, treatment and education, as directed by the supervising agent.

The circuit court also ordered Crawley not to have any contact with eight named individuals, and waived court costs, Public Defender fees, and probation fees.

The panel majority recognized that Crawley's sentence, as converted by operation of law to a term-of-years sentence, violated the statutorily-mandated life sentence and that *Greco* mandates the illegality be corrected to impose the life sentence, "with the illegality removed." *Crawley*, slip op. at 18-20; *see Greco*, 427 Md. at 513. The panel majority further recognized the distinction between *Greco* and Crawley's case, as the latter and not the former involved a plea agreement to which the court had bound itself. *Crawley*, slip op. at 21. The panel majority reasoned that the remedy for the sentencing illegality in Crawley's case—suspending a part of the sentence without imposing a period of probation—should apply only where the record "demonstrate[s] both an understanding [of] and an agreement to the imposition of a probationary period." *Id.* at 19-20 (quoting *Rankin v. State*, 174 Md. App. 404, 414 (2007)). The panel majority concluded that, because the evidence does not establish that Crawley contemplated probation when he entered into the plea agreement, that element of the sentence that was imposed at resentencing following the motion to correct the original must be removed. *Id.* at 20-21.

The panel majority vacated the sentence imposed by the circuit court and remanded the case for a hearing, at which Crawley would have the opportunity to negotiate a probationary period with the State. *Id.* at 21. The panel majority further directed that, if that negotiation is successful, then Crawley "must be resentenced to life imprisonment, with all but thirty-five years suspended and to be followed by the agreed-to probationary term. . . . [I]f the appellant does not agree with the State to a probationary term, then he shall have the right to withdraw his guilty plea in favor of a new trial." *Id.* at 22.

10

The third member of the panel, now-Chief Judge Patrick Woodward, dissented from the judgment. He agreed with the majority that, "we must determine what are the terms of his plea agreement," but he "diverge[d] from the views of appellant and the majority as to exactly what are those terms." *Crawley*, slip. op. at 1 (Woodward, J., dissenting). Chief Judge Woodward relied in this case on *Rankin*. There, the Court of Special Appeals concluded that "we consider terms implied by the plea agreement as well as those expressly provided." *Rankin*, 174 Md. App. at 409 (citation omitted). The *Rankin* court held that,

> because a period of probation must be attached to a suspended sentence, . . . the right to impose a period of probation is included in any plea agreement that provides for a suspended sentence. If we were to hold otherwise, the imposition of a suspended sentence would be meaningless.

*Id.* at 411-12 (footnotes omitted). Chief Judge Woodward reasoned in his dissent in this case:

> [T]he instant case leads me to the conclusion that a period of probation is an implied term of appellant's plea agreement to a split sentence of life imprisonment suspend all but thirty-five years. Such conclusion is reinforced by the fact that, without a period of probation as an implied term, the plea agreement would be for an illegal sentence, and "[a] defendant cannot consent to an illegal sentence."

*Crawley*, slip op. at 1 (Woodward, J., dissenting) (quoting *Holmes v. State*, 362 Md. 190, 196 (2000)). Chief Judge Woodward, finding no error or abuse of discretion on the part of the circuit court, would have affirmed the sentence as corrected by that court. *Id.* at 4.

11

We granted the State's petition for writ of certiorari to review the judgment of the Court of Special Appeals. *State v. Crawley*, 450 Md. 421 (2016).[4]

IV

*Discussion*

*The parties' arguments*

The State seeks reversal of the holding of the panel majority of the Court of Special Appeals. The State maintains that the circuit court, in resentencing Crawley pursuant to Maryland Rule 4-345(a), properly corrected Crawley's illegal sentence by adding the period of probation to effectuate the split sentence imposed at the original sentencing. Relying on the undisputed proposition that Crawley's original sentence was illegal pursuant to *Greco*, the State argues that, because the statutory minimum sentence for felony murder is life imprisonment, absent a provision for a period for probation, "there would be no ability for the court ever to direct execution of the suspended part of the sentence." (Citation omitted). The State disagrees with Crawley's emphasis on the fact that his sentence was imposed as a result of a guilty plea. The State maintains that an illegal sentence remains illegal even if it was the product of a plea agreement. The State further

---

[4] The Question Presented for review was:
> Did the Court of Special Appeals improperly vacate Crawley's corrected sentence, where the trial court, pursuant to *Greco v. State*, 427 Md. 477 (2012), corrected the illegality in Crawley's sentence by the addition of a period of probation in order to effectuate the split sentence imposed in the case?

Oliver Smith, Sr., the father of the deceased murder victim, also filed a Petition for Writ of Certiorari, which this Court denied.

argues that "Crawley's negotiated arrangement for a split sentence of life imprisonment implicitly and necessarily contemplated a period of probation."

Crawley argues, in response, that the test for determining the legality of a sentence imposed pursuant to a plea deal is based upon what a "reasonable lay person would understand the agreement to be." He asserts that "[i]t would be unreasonable to conclude . . . that a lay person in [Crawley's] position would somehow know that his sentence included probation, especially in light of the fact that this Court has held that, in other circumstances, probation is not part of the sentence, if a sentencing court fails to mention 'probation.'" (citing *Cathcart*, 397 Md. at 329). Crawley maintains that any ambiguity as to the nature of the plea agreement must be resolved in his favor to avoid a violation of Maryland Rule 4-243(c)(3).[5] He agrees with the majority of the Court of Special Appeals panel that *Greco* is distinguishable from the instant case because the defendant in *Greco* received his original sentence following a guilty verdict, rather than a guilty plea. Finally, Crawley requests that, even if this Court reverses the judgment of the Court of Special Appeals, this case be remanded with instructions for the parties to attempt to negotiate a new sentence.

*What is—and is not—controlling authority*

---

[5] Maryland Rule 4-243(c)(3) provides that: "If the plea agreement is approved, the judge shall embody in the judgment the agreed sentence, disposition, or other judicial action encompassed in the agreement or, with the consent of the parties, a disposition more favorable to the defendant than that provided for in the agreement."

13

Our decision in this case is guided by settled law. A substantively illegal sentence is subject to correction at any time. Md. Rule 4-345(a). Whether a sentence is an illegal sentence under Maryland Rule 4-345(a) is a question of law that is subject to de novo review. *Meyer v. State*, 445 Md. 648, 663 (2015).

Courts do not possess the authority to impose a sentence that does not comport with a legislatively-mandated sentence, and any such sentence must be corrected to remedy the illegality. *See Cathcart*, 397 Md. at 325, 329. The mandated sentence for the crime of first degree murder is "imprisonment for life." Crim. Law § 2-201(b). The sentencing court, however, is not precluded from imposing a split sentence, even when the crime is first degree murder. But, a court, when imposing a split sentence, must impose a period of probation. *Cathcart*, 397 Md. at 329 (discussing Crim. Proc. § 6-222). Moreover, a defendant cannot consent to an illegal sentence. *Holmes*, 362 Md. at 196.

Crawley acknowledges that the statutorily-mandated sentence of life imprisonment, though legitimately split by suspending all but 35 years of imprisonment, suffered from the fatal flaw of not including a period of probation. And, he agrees that the sentence originally imposed on his plea of guilty to first degree murder, given the inherent illegality of it, could not stand and therefore was subject to later correction pursuant to Maryland Rule 4-345(a).

Neither does Crawley take issue with the remedy established in *Greco*, which is to "impose a sentence of life imprisonment, all but [the term-of-years portion of the original split sentence] suspended, to be followed by some period of probation." *Greco*, 427 Md. at 513. He insists, though, that the *Greco* remedy does not apply here because the sentencing illegality arose out of a plea agreement.

14

Crawley directs us to *Cuffley v. State*, 416 Md. 568 (2010). We held in that case that "any question that later arises concerning the meaning of the sentencing term of a binding plea agreement must be resolved by resort *solely* to the record established at the Rule 4-243 plea proceeding." *Id.* at 582. What Crawley does not mention is that *Cuffley*, as well as its progeny, *Baines v. State*, 416 Md. 604 (2010), and *Matthews v. State*, 424 Md. 503 (2012), dealt with resolving *ambiguous* sentencing terms of a plea agreement. *See Cuffley*, 416 Md. at 583 (stating that where "examination of the record leaves ambiguous the sentence agreed upon by the parties, then the ambiguity must be resolved in the defendant's favor"); *Baines*, 416 Md. at 615 (same); *Matthews*, 424 Md. at 523 (holding that the sentencing term of the plea agreement was "ambiguous" and that the "ambiguity must be resolved in favor of Petitioner"). We do not have here an issue concerning an arguably ambiguous sentencing term of a plea agreement. What we have, instead, is a sentencing term of a plea agreement that, though agreed upon by the parties and imposed by the court, was unequivocally illegal. *Cuffley* and its progeny therefore have no application here.

*Our decision*

The principle that a substantively illegal sentence must be corrected applies regardless of whether the sentence has been negotiated and imposed as part of a binding plea agreement. Here, the negotiated split sentence to which Crawley agreed and the court imposed was the statutorily-mandated life imprisonment, with all but 35 years suspended. Because the suspended portion could not remain due to the lack of a probationary period, the sentence was converted by operation of law to an illegal term-of-years sentence, which

15

could not stand. Crawley's sentence—unlawful as originally imposed—was properly remedied through the imposition of a period of probation.

*Greco* instructs that a corrected sentence is "limited by the maximum legal sentence that could have been imposed, with the illegality removed." 427 Md. at 513. The circuit court followed the dictates of *Greco* by vacating the original unlawful sentence, reimposing the mandatory life sentence with all but 35 years suspended, and adding a period of probation to the suspended portion of that sentence. In doing so, the circuit court effectively removed the illegality created by the absence of a period of probation attached to the suspended portion of the life sentence. There is no dispute that the four-year probation period satisfied constitutional standards and statutory limits. *Meyer*, 445 Md. at 670 ("When imposing probation conditions, [a] judge is vested with very broad discretion . . . [in order] to best accomplish the objectives of sentencing—punishment, deterrence and rehabilitation[,] and is limited only by constitutional standards and statutory limits.") (citations and internal quotations omitted). The imposition of that period of probation, moreover, did not constitute an abuse of the circuit court's "very broad discretion." *Id.*

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. COSTS TO BE PAID BY RESPONDENT.**

16