*Juan Pablo B. v. State of Maryland*
No. 2614, Sept. Term, 2019
Opinion by Leahy, J.

**Criminal Law > Jury Instruction > Supplemental Instruction**

The jury had expressly requested the court's help and indicated to the court that it was deadlocked on one count. As in *Armacost v. Davis*, where the court issued a modified *Allen* instruction to aid a seemingly deadlocked jury, 462 Md. 504, 539 (2019), the judge in the instant case acted reasonably by delivering the instruction when the jury was deadlocked on one of the counts. The fact that the jury had only been deliberating approximately 90 minutes before alerting the court to its deadlock on one count is not alarming, given that there were only two witnesses who testified. Accordingly, we hold that the circuit court did not abuse its discretion in giving the modified *Allen* instruction.

**Criminal Law > Sentencing > Illegal Sentence**

An intrinsically illegal sentence "is a sentence 'not permitted by law.'" *State v. Wilkins*, 393 Md. 269, 273 (2006) (quoting *Walczak v. State*, 302 Md. 422, 427 (1985)). Indeed, this elemental principle delimits the trial court's revisory power under Maryland Rule 4-345(a), for an error committed by the court during a sentencing proceeding "is not ordinarily cognizable under Rule 4-345(a) where the resulting sentence or sanction is itself lawful." *Id.* at 275.

**Criminal Law > Sentencing > Illegal Sentence > Determining Illegality > Conflict Between Sentencing Transcript and Record**

The general rule is that, where there is a conflict between a sentencing transcript and either a docket entry or a commitment record, the transcript controls unless it is shown to be in error. *See, e.g.*, *Gatewood v. State*, 158 Md. App. 458, 481-82 (2004) (transcript generally prevails over docket entry), *aff'd*, 388 Md. 526 (2005); *Dutton v. State*, 160 Md. App. 180, 191-92 (2004) (transcript generally prevails over commitment record).

**Criminal Law > Sentencing > Correcting Mistake in Announcement**

A sentencing court is not entirely powerless to correct a mistake in its announcement of a sentence, but its authority to do so is circumscribed by Rule 4-345(c).

**Criminal Law > Sentencing > Imposition of Probation**

The plain language of Rule 4-346(a) is mandatory. The Rule expressly requires a sentencing court to render the advisements during the announcement of sentence in open court, if it chooses to impose a period of probation.

**Criminal Law > Sentencing > Illegal Sentence > Determining Illegality > Violation of Maryland Rule**

We hold that under Maryland Rules 4-345(c) and 4-346(a), the court could not correct its mistake without doing so on the record in open court while Appellant was still present.

**Criminal Law > Sentencing > Illegal Sentence > Determining Illegality**

"There is no simple formula to determine which sentences are 'inherently illegal' within the meaning of Rule 4-345(a)[.]" *Johnson v. State*, 427 Md. 356, 368 (2012). Although undoubtedly a sentence that exceeds the statutory maximum or is less than a mandatory minimum is inherently illegal, it is less clear whether a sentence imposed in violation of a mandatory Maryland Rule likewise is inherently illegal.

**Criminal Law > Sentencing > Illegal Sentence > Determining Illegality > Violation of Maryland Rule > Procedural Error**

We must, therefore, conclude that in limited circumstances, and despite the Constitution's statement in art. IV, § 18(a) that the Maryland Rules have the force of law, some sentences imposed in violation of a mandatory Maryland Rule are not inherently illegal when the error is only procedural and without substantive effect. *See Colvin v. State*, 450 Md. 718, 728 (2016).

**Criminal Law > Sentencing > Illegal Sentence > Determining Illegality > Violation of Maryland Rule**

We conclude that generally, but not always, sentences that are imposed in violation of a mandatory Maryland Rule are inherently illegal. Now, we must decide under which category the instant case falls: a mere procedural error or an inherent illegality. Our decisional law does not reveal a bright-line rule; however, two decisions of the Court of Appeals guide our analysis: *Jones v. State*, 384 Md. 669 (2005), and *Montgomery v. State*, 405 Md. 67 (2008).

**Criminal Law > Sentencing > Illegal Sentence > Determining Illegality > Violation of Maryland Rule > Inherent Illegality**

The omission, however unintentional, of the duration of probation from Appellant's sentence, like the three year deferred reporting date and its contingencies in *Montgomery v. State*, is "an integral part of the sentence itself." 405 Md. 67, 76 (2008).

Circuit Court for Prince George's County
Case No. CT-181511-X

JUAN PABLO B.

v.

STATE OF MARYLAND

_____

Kehoe,
Leahy,
Friedman,

JJ.

_____

Opinion by Leahy, J.

_____

Filed:  September 29, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

A jury sitting in the Circuit Court for Prince George's County found Juan Pablo B. ("Appellant") guilty of sexual abuse of a minor, third-degree sexual offense, and second-degree assault. The court imposed concurrent sentences totaling 25 years' imprisonment, with all but 20 years suspended. During the sentencing hearing, the court articulated various "conditions of probation," including lifetime sex offender registration, but failed to announce that Appellant was to serve a period of probation, and for how long, following his release from prison. Appellant noted this appeal and raises two issues as follows:

> 1. "Did the circuit court err in giving an *Allen* instruction over the objection of both the defense and State?"
>
> 2. "Must the docket entries, commitment record, and probation order be corrected to accurately reflect the fact that, at the sentencing hearing, the circuit court did not impose a period of probation?"

We hold that the circuit court did not abuse its discretion in giving a modified *Allen* instruction.[1] We find merit in Appellant's second contention, however, and conclude that the circuit court illegally increased Appellant's sentence by adding a five-year period of probation. Therefore, we remand with instructions to strike the period of probation from the docket entry, commitment record, and probation order. At the same time, the circuit

---

[1] Throughout his brief, Appellant refers to the disputed instruction as an "*Allen* instruction," but, strictly speaking, the instruction given was a modified *Allen* instruction closely tracking Maryland Criminal Pattern Jury Instruction ("MPJI-Cr") 2:01 ("Jury's Duty to Deliberate"). The original *Allen* instruction, modeled after the instruction given in its eponym, *Allen v. United States*, 164 U.S. 492 (1896), has been criticized as being unduly coercive by the Maryland Court of Appeals. *See Nash v. State*, 439 Md. 53, 90-91 (2014) (citing *Graham v. State*, 325 Md. 398, 409 (1992)); *Burnette v. State*, 280 Md. 88, 96 (1977); *Kelly v. State*, 270 Md. 139, 144 (1973)).

court should clarify that, as a result of Appellant's convictions, he remains subject to the conditions of lifetime sexual offender supervision that were imposed in accordance with Maryland Code (2001, 2018 Repl. Vol.), Criminal Procedure Article ("CP"), § 11-723.[2]

## BACKGROUND

The victim in this case was Appellant's daughter, V.[3]  At the time of the offenses, V. lived with her parents, Appellant and Irma D., in a one-bedroom apartment in

---

[2] Section 11-723(d)(3) provides:

The conditions of lifetime sexual offender supervision may include:
> (i) monitoring through global positioning satellite tracking or equivalent technology;
> (ii) where appropriate and feasible, restricting a person from living in proximity to or loitering near schools, family child care homes, child care centers, and other places used primarily by minors;
> (iii) restricting a person from obtaining employment or from participating in an activity that would bring the person into contact with minors;
> (iv) requiring a person to participate in a sexual offender treatment program;
> (v) prohibiting a person from using illicit drugs or alcohol;
> (vi) authorizing a parole and probation agent to access the person's personal computer to check for material relating to sexual relations with minors;
> (vii) requiring a person to take regular polygraph examinations;
> (viii) prohibiting a person from contacting specific individuals or categories of individuals; and
> (ix) any other conditions deemed appropriate by the sentencing court.

In addition, the "sentencing court . . . may adjust the special conditions of lifetime sexual offender supervision, in consultation with the person's sexual offender management team." CP § 11-723(d)(4).

[3] To protect the victim's identity, we refer to her by an initial that has no connection to her name.  For the same reason, we identify her father using only the first initial in his last name.

Hyattsville in Prince George's County. Both parents worked, and Appellant frequently was home alone with V.

V. testified at trial that the abuse began before she had reached the age of ten. The first incident that she could recall happened when she was on the couch, watching television, and Appellant ran his hands along her thighs and up to her "private parts." According to V., Appellant would abuse her in this manner "multiple times when" they "were home alone."

On another occasion, while V. was in the kitchen preparing food, Appellant approached her from behind and fondled her breasts. At other times, Appellant would crawl into V.'s bed while she was trying to sleep and "touch" her. V. then testified that Appellant raped her one evening, just before they were supposed to leave to pick up her mother from work. On yet another occasion, Appellant entered the bathroom while V. was bathing and took photographs of her. Appellant occasionally played pornographic videos in V.'s presence and would tell her various sexual acts that he wanted to perform with her.

Eventually, when she was approximately 15 years old, V. told her cousin that her father had been sexually abusing her. Shortly after that, V. also informed her aunt, uncle, and mother of the abuse.

V.'s mother notified the police that her daughter had been sexually abused by her husband. Ultimately, a four-count indictment was returned, in the Circuit Court for Prince George's County, charging Appellant with sexual abuse of a minor family member, rape in the second degree, sexual offense in the third degree, and assault in the second degree. The matter proceeded to a two-day jury trial, during which only V. and her mother testified.

The jury acquitted Appellant of second-degree rape but found him guilty of the remaining charges.

The court sentenced Appellant to the following concurrent terms of imprisonment: (1) for sexual abuse of a minor, 25 years, with all but 20 years suspended; (2) for third-degree sexual offense, ten years, with all but two years suspended; and (3) for second-degree assault, ten years, with all but six months suspended. The court also ordered, among other things, that Appellant register as a lifetime sexual offender.

At the sentencing hearing, the court mentioned terms of probation but failed to state that it was imposing a period of probation. The same day, but after the hearing had concluded, the court issued a probation order, signed by Appellant, stating the conditions of probation and that Appellant was subject to a five-year term of probation upon release from incarceration.

We include additional facts in our discussion of the issues.

## DISCUSSION

## I.

## Modified *Allen* Instruction

## a. Circumstances leading to instruction

When, at the close of the State's case-in-chief, the parties and the court conferred on instructions, the court noted that "[b]oth parties [were] requesting [instruction] 2:01, jury's duty to deliberate," but that it would "hold off on that one" because it "normally"

would not give that instruction "until we have the Allen charge situation."[4]  Subsequently, after the jury had been deliberating approximately 90 minutes, it sent a note to the court, stating:  "We agree on 3 counts, but can't agree on one.  How do we proceed?"  A bench conference ensued.

The court informed the parties that it had received the jury note and sought their views on what course of action it should take.  The prosecutor suggested that the court should simply advise the jury to continue its deliberations, and defense counsel concurred.  The court disagreed, observing that "the jury has had approximately an hour and a half to review the testimony" of the principal witness and that her testimony "was enough for the jury to arrive with a verdict on the majority of the counts."  Noting that the jury was "looking for guidance with respect to their current position of being deadlocked on one count," the court declared that, "[o]ver the objections of both parties," it would give the modified *Allen* instruction, MPJI-Cr 2:01, and it proceeded to do so.  Just over twenty

---

[4] Maryland Criminal Pattern Jury Instruction 2:01  provides:

> The verdict must be the considered judgment of each of you.  In order to reach a verdict, all of you must agree.  In other words, your verdict must be unanimous.  You must consult with one another and deliberate with a view to reaching an agreement, if you can do so without violence to your individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  During deliberations, do not hesitate to reexamine your own views.  You should change your opinion if convinced you are wrong, but do not surrender your honest belief as to the weight or effect of the evidence only because of the opinion of your fellow jurors or for the mere purpose of reaching a verdict.

minutes later, the jury rendered its verdict, acquitting Appellant of second-degree rape and finding him guilty of the remaining charges.

### b. Analysis

Appellant contends that the circuit court abused its discretion by giving a modified *Allen* instruction after the jury had deliberated "for only 90 minutes," near the end of the day, and after both the defense and prosecution objected to giving the instruction. Recognizing that the instruction given by the judge closely tracked MPJI-Cr 2:01, Appellant maintains, nonetheless, that the court abused its discretion in giving that instruction under the circumstances of this case. The State counters that, under all the circumstances (and largely for the reasons expressed by the judge), the court did not abuse its discretion.

We begin our analysis with Maryland Rule 4-325 governing jury instructions. The Rule states in relevant part:

> **(a) When Given.** The court shall give instructions to the jury at the conclusion of all the evidence and before closing arguments and may supplement them at a later time when appropriate. In its discretion the court may also give opening and interim instructions.
>
> * * *
>
> **(c) How Given.** The court may, and at the request of any party shall, instruct the jury as to the applicable law and the extent to which the instructions are binding. The court may give its instructions orally or, with the consent of the parties, in writing instead of orally. The court need not grant a requested instruction if the matter is fairly covered by instructions actually given.

Under Rule 4-325(a), the court "may supplement" the instructions "at a later time when appropriate." Then, under Rule 4-325(c) the court "may . . . instruct the jury as to

6

the applicable law and the extent to which the instructions are binding." Attendant to the trial court's broad authority in this regard, our review of the court's decision to give a particular jury instruction is under an abuse of discretion standard. *Appraicio v. State*, 431 Md. 42, 51 (2013). "Where the decision or order of the trial court is a matter of discretion it will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Atkins v. State*, 421 Md. 434, 447 (2011) (quoting *Gunning v. State*, 347 Md. 332, 351-52 (1997)).

As Judge McDonald explained in *Armacost v. Davis*, "[m]ost of the court's instructions on the law are given after the close of the evidence, but certain instructions may be given at the outset of the trial, during its course, or in response to jury questions or notes. A trial court enjoys a fair amount of discretion in what it tells the jury, although any instructions it gives must be consistent with the law." 462 Md. 504, 510-11 (2019). "Supplemental instructions can include an instruction given in response to a jury question." *Appraicio*, 431 Md. at 51. When the trial court is presented with a jury question, it "must respond with a clarifying instruction when presented with a question involving an issue central to the case." *Id.* (quoting *Cruz v. State*, 407 Md. 202, 211 (2009)).

Here, among the circumstances the court faced were: the jury presented the court with a note, stating that it had reached agreement on three of the four charges but was *deadlocked* on the remaining one and *requested guidance* on how to proceed; the trial court had not given the duty-to-deliberate instruction, as requested by the parties, when it instructed the jury prior to the beginning of deliberations; the parties *then* objected to the

7

instruction; the jury had been deliberating approximately 90 minutes before presenting the note at approximately 5:30 p.m.; and, as the court declared, this was a relatively uncomplicated case, turning primarily on the testimony of a single witness (the victim).

Not all of these circumstances pull in the same direction. Appellant emphasizes the parties' objection to giving the instruction; what he regards as the relatively brief duration of jury deliberations; and the timing at the end of the day, which he maintains encouraged a rush to judgment. Other circumstances, however, weigh in favor of the trial court's decision to give the duty-to-deliberate instruction. First, the parties had requested the court give the same instruction following the close of all the evidence, but the court declined, expressing its preference to hold the instruction in reserve if needed.[5] Second, the court aptly observed that this was a relatively straightforward case, in which only two witnesses testified. Third, and what distinguishes this case from many cited by Appellant, the jury asked for the court's instruction on how to proceed, triggering the court's obligation to advise the jury. *Appraicio*, 431 Md. at 51; *Cruz*, 407 Md. at 211. Under these circumstances, we cannot say that the court's action was "manifestly unreasonable," or that it exercised its discretion "on untenable grounds, or for untenable reasons." *Atkins*, 421 Md. at 447.

Appellant's reliance upon *Fletcher v. State*, 8 Md. App. 153 (1969), is misplaced. We said, there, that whether giving a duty-to-deliberate instruction constitutes reversible

---

[5] We observe that the "Notes on Use" appended to MPJI-Cr 2:01 expressly contemplate that a judge may hold such instructions in reserve, stating: "This instruction may be given before the jury deliberates and/or if the jury becomes deadlocked."

8

error "depends not only upon the language used but upon the conditions and attendant circumstances under which the instruction is given." *Id.* at 155. The circumstances in *Fletcher* were markedly different from those faced by the trial court here. In *Fletcher*, "no communication from the jury was received by the judge indicating any disagreement or difficulty in reaching a verdict or that they did not understand the instructions already given," and the trial court gave the instruction sua sponte, after the jury had deliberated for a little more than an hour, in a complex case involving multiple defendants. *Id.* at 158. In stark contrast, the jury in this case had expressly requested the court's help and indicated to the court that it was deadlocked on one count. As in *Armacost v. Davis*, where the court issued a modified *Allen* instruction to aid a seemingly deadlocked jury, 462 Md. at 539, the judge in the instant case acted reasonably by delivering the instruction when the jury was deadlocked on one of the counts. The fact that the jury had only been deliberating approximately 90 minutes before alerting the court to its deadlock on one count is not alarming, given that there were only two witnesses who testified. Accordingly, we hold that the circuit court did not abuse its discretion in giving the modified *Allen* instruction.

## II.

## Supervised Probation

### a. Sentencing hearing and subsequent order

At the conclusion of the sentencing hearing, the court sentenced Appellant as follows:

> [W]ith respect to child abuse -- sexual child abuse, the Court will impose a sentence of 25 years' incarceration, suspend all but 20 years, give you credit

for 447 days already served. Just so the record is clear, I am going two years above guidelines due to the nature and circumstances of the offense at hand.

With respect to sex offense in the third degree, the Court will impose a sentence of ten years' incarceration, suspend all but two years to run concurrent to the sentence imposed for . . . Count One.

\* \* \*

With respect to Count Four, second degree assault, the Court will impose a sentence of ten years' incarceration, suspend all but six months to run concurrent to the sentence imposed in Count One and Count Three.

**As conditions of probation, we will mandate that the defendant register as a lifetime sexual offender. We will also order that the defendant participate in the Sex Offender Program as needed by Parole and Probation. We will also order that the defendant have no contact -- excuse me, no contact with his daughter, [V.], and no contact with . . . [the mother**].

We will also order that the defendant undergo drug and alcohol evaluation and treatment as deemed appropriate by Parole and Probation. . . . Lifetime supervision, also.

\* \* \*

You have 30 days to file an appeal, 30 days to file application for review of sentence, 90 days to file a motion for reconsideration of sentence. If you wish to exercise any of those post-sentencing rights, I suggest you speak to your attorney as soon as possible. **You do have some paperwork that you need to sign, so just have a seat.**

(Emphasis added).

Although the court declared several conditions of probation, it framed those conditions around mandating registration and participating in the sex offender program. Apart from that, the court failed to state in open court that it was, in fact, imposing any period of probation. On the same day, however, the court issued a probation order, signed by Appellant, restating the conditions of probation that it had ordered in open court *and*

10

that Appellant was subject to a five-year term of probation upon release from incarceration. A daily sheet, dated the day of the sentencing hearing and filed the following week, indicated the five-year term of probation, and a corresponding docket entry reflects the same period of probation.

Before this Court, Appellant contends that the circuit court illegally increased his sentence by adding a five-year term of probation after he already had left the courtroom following the pronouncement of sentence. Invoking Maryland Rule 4-345(a) and *Walczak v. State*, 302 Md. 422 (1985) (permitting an appellant to raise a claim of sentence illegality without having raised an objection below), he requests that we strike the five-year probationary period because, he alleges, it was not imposed during the sentencing hearing and is therefore intrinsically unlawful.

The State counters that the court committed a mere procedural error and that the sentence it imposed was not intrinsically illegal. The State points out that Appellant does not dispute that both parties argued in favor of dispositions that included a period of probation at the sentencing hearing, and that the court imposed numerous conditions of probation. Nor does Appellant dispute that the probation order that both he and the judge signed on the same day reflects that the court ordered five years' probation. Consequently, the State asserts, the court's failure to mention the duration of the probation period amounted to no more than mere procedural error. The State directs us to *Bailey v. State*, 464 Md. 685 (2019), wherein the Court of Appeals stressed: "Rule 4-345(a) is intended to correct sentences that are inherently illegal, not just merely the product of procedural error." *Id.* at 696 (cleaned up). It follows, the State urges, that because Appellant did not

11

lodge a contemporaneous objection and, furthermore, signed the probation order issued by the circuit court, Appellant waived his claim. As a fallback position, the State notes that, were we to vacate the period of probation, Appellant would nonetheless be "subject to various mandatory supervision requirements that must remain in place regardless."

## b. Analysis

An intrinsically illegal sentence "is a sentence 'not permitted by law.'" *State v. Wilkins*, 393 Md. 269, 273 (2006) (quoting *Walczak*, 302 Md. at 427). Indeed, this elemental principle delimits the trial court's revisory power under Maryland Rule 4-345(a), for an error committed by the court during a sentencing proceeding "is not ordinarily cognizable under Rule 4-345(a) where the resulting sentence or sanction is itself lawful." *Id.* at 275. Our examination into whether the sentence imposed in the underlying case was illegal must begin with an antecedent inquiry: how to interpret the record.

### 1. Interpreting the record

According to Appellant, our interpretation must give primacy to the transcript of the sentencing hearing. Relying on *Cathcart v. State*, 397 Md. 320 (2007),[6] Appellant contends that the court's failure to declare the duration of probation stripped the purported split sentences of their character as such, and they thereby became, by operation of law, terms of active incarceration only, without any attendant period of probation. Viewed in

---

[6] When a court imposes a total sentence and suspends the execution of a part of it, we refer to that sentence as a "split sentence." *Ridenour v. State*, 142 Md. App. 1, 7 (2001). In *Cathcart*, the Court of Appeals held that, where a court purports to impose a split sentence but fails to impose a period of probation, the "unsuspended part of the sentence . . . becomes, in law, the effective sentence." 397 Md. at 330

that light, the court's attempt to "correct" the orally pronounced sentence by including a five-year term of probation in the probation order amounted to an illegal increase in sentence.

The State counters that we should interpret the transcript and the probation order as a whole. According to the State, both parties were aware that the court could impose a period of probation, and the "transcript makes abundantly clear that the trial court was imposing a period of probation as part of [the] disposition." Therefore, maintains the State, there is no conflict between the transcript and the probation order. Once again, insists the State, any error the court may have committed in failing to declare orally the duration of probation was, at most, a procedural irregularity, not an intrinsic illegality.

The general rule is that, where there is a conflict between a sentencing transcript and either a docket entry or a commitment record, the transcript controls unless it is shown to be in error. *See, e.g.*, *Gatewood v. State*, 158 Md. App. 458, 481-82 (2004) (transcript generally prevails over docket entry), *aff'd*, 388 Md. 526 (2005); *Dutton v. State*, 160 Md. App. 180, 191-92 (2004) (transcript generally prevails over commitment record). The parties disagree whether the same rule applies to a conflict between a transcript and a probation order. But first, we must determine whether there really is a conflict between the transcript and the probation order in this case.

There is no dispute that the court did not declare, in open court, that it was imposing a period of probation or its duration, although it purported to impose several conditions of probation. And, while Appellant was still before the sentencing court, he was informed that there was "some paperwork" that he "need[ed] to sign" and that he should "just have

13

a seat." That "paperwork" included the probation order, dated that same day, which Appellant signed after the hearing.

This would be a clear-cut case had there been no reference to "conditions of probation" and "some paperwork" in the sentencing transcript. In *Shade v. State*, we held that a sentencing court's failure to impose probation, in open court at sentencing, could not be reconciled with a probation order purporting to do so, which had been entered into the record unilaterally by the court. 18 Md. App. 407, 411 (1973). We reasoned that

> [t]he unilateral perfunctory execution by the trial judge of an 'Order for Conditional Suspension of Sentence' may not change the conditions imposed at the time of sentencing, nor does it, per se, give rise to a rational inference that the probationer knew of its terms or of its existence.

*Id.* In *Shade*, however, "there was nothing in the transcript" indicating that the defendant had been placed on probation. *Id.* at 410. Here, by contrast, the transcript plainly reflects that the judge referred not only to various conditions of probation but also to "some paperwork," which turned out to be the probation order, issued the same day, and signed by Appellant after the sentencing hearing.

We conclude that the mention of probation conditions and "some paperwork" renders the transcript ambiguous as to whether Appellant was fully aware that he was being sentenced to probation in addition to the conditions imposed under CP § 11-723. But there is clearly no indication in the transcript that Appellant was being sentenced to a five-year period of probation effective upon his release from incarceration. Therefore, we resolve that the probation order, which defines the terms and conditions of a five-year period of

probation, is in conflict with the transcript, which neither defines nor mentions a period of probation.

We turn next to consider the legality of the court's action imposing probation through the near-contemporaneous issuance of the probation order without having advised Appellant during the hearing that he was sentenced to a five-year period of probation effective upon his release from incarceration.

### 2. *Whether, under the circumstances, imposition of probation via entry of the probation order resulted in an inherently illegal sentence*

### i. Rule violation?

Two rules address the issue before us: Maryland Rule 4-345(c), governing correction of a mistake in the announcement of sentence; and Maryland Rule 4-346(a), governing the imposition of probation. We will consider each rule in turn.

In *Costello v. State*, the Court of Appeals declared the basic principle governing the method by which a court may impose a sentence:

> The law does not permit speculation as to the sentencing judge's subjective intent in order to ascertain the extent of the convicted person's punishment. Sentencing is a definite and objective matter, and it is for that reason that the only sentences known to the law are those which appear in the public records of the courts.

240 Md. 164, 168 (1965). In *Robinson v. Lee*, the Court of Appeals further declared that a "trial judge's obligation is to articulate the period of confinement with clarity so as to facilitate the prison authority's task."[7] 317 Md. 371, 379 (1989).

---

[7] The issue in *Lee* focused on ambiguity as to whether the sentencing court had imposed concurrent or consecutive sentences, and thus the Court spoke of a "period of
(Continued)

A sentencing court is not entirely powerless to correct a mistake in its announcement of a sentence, but its authority to do so is circumscribed by Rule 4-345(c), which provides:

> **Correction of Mistake in Announcement.** The court may correct an evident mistake in the announcement of a sentence if the correction is made on the record before the defendant leaves the courtroom following the sentencing proceeding.

In *State v. Brown*, the Court of Appeals interpreted what is meant by an "evident mistake in the announcement of a sentence." 464 Md. 237, 240 (2019). The Court concluded that, "for a 'mistake in the announcement of a sentence' to be 'evident' under Maryland Rule 4-345(c), the mistake must be clear or obvious," not "merely unusual or anomalous compared to other sentences that the trial court imposed during the same sentencing proceeding[.]" *Id.* at 243. The Court further instructed that, if a mistake in announcement is brought to a sentencing court's attention, it must "acknowledge that it made a mistake in the announcement of a sentence," and it must "indicate that it is correcting the mistake." *Id.* at 266.

Maryland Rule 4-346(a) governs the imposition of probation and provides:[8]

> **Manner of Imposing.** When placing a defendant on probation, the court shall advise the defendant of the conditions and duration of probation and the possible consequences of a violation of any of the conditions. The court also shall file and furnish to the defendant a written order stating the conditions and duration of probation.

---

confinement." 317 Md. 371, 379 (1989). We think a sentencing court's obligation extends to imposing a period of probation with equal clarity.

[8] A rule substantially similar to Rule 4-346 first was adopted by the Court of Appeals as former Rule 775, effective July 1, 1977, as part of an earlier comprehensive revision to the Criminal Rules. 4 Md. Reg. 235, 255 (Feb. 16, 1977).

The plain language of Rule 4-346(a) is mandatory. The Rule expressly requires a sentencing court to render the advisements during the announcement of sentence in open court, if it chooses to impose a period of probation.

It is undisputed that the underlying transcript reflects that at the sentencing hearing, the circuit court failed to "advise the defendant of the conditions and duration of probation[.]" Md. Rule 4-346(a). Moreover, the court seemingly was unaware that it had failed to do so, and it made no attempt to correct its mistake by means of its authority under Rule 4-345(c). Instead, the court included a five-year term of probation in the subsequently-issued probation order that was signed by Appellant, and the clerk included that term of probation in the docket entry. We hold that under Maryland Rules 4-345(c) and 4-346(a), the court could not correct its mistake (whether knowingly or inadvertently) without doing so on the record in open court while Appellant was still present. Now we are positioned to address whether these rules violations resulted in an illegal sentence.

### ii. Procedural error or inherent illegality?

There are three general categories of "intrinsically" or "inherently" illegal sentences within the meaning of Rule 4-345(a): a sentence that either exceeds the maximum provided by statute, *Carlini v. State*, 215 Md. App. 415, 427 (2013), or is less than a mandatory minimum, *Hoile v. State*, 404 Md. 591, 620 (2008); a sentence that "never should have been imposed," *Johnson v. State*, 427 Md. 356, 368-69 (2012); and a sentence that exceeds

17

the cap established under a binding plea agreement, *Matthews v. State*, 424 Md. 503, 518-19 (2012).[9]

"There is no simple formula to determine which sentences are 'inherently illegal' within the meaning of Rule 4-345(a)[.]" *Johnson*, 427 Md. at 368. Although undoubtedly a sentence that exceeds the statutory maximum or is less than the mandatory minimum is inherently illegal,[10] it is less clear whether a sentence imposed in violation of a mandatory Maryland Rule likewise is inherently illegal. At one time it appeared that it might be the case, under the syllogism that the Maryland Rules "have the force of law until rescinded, changed or modified by the Court of Appeals or otherwise by law," Md. Const., art. IV, § 18(a); that "a sentence not permitted by law" is inherently illegal, *Wilkins*, 393 Md. at 273 (cleaned up); and, that a sentence imposed in violation of a mandatory rule is "a sentence not permitted by law" and, therefore, inherently illegal. There are two noteworthy lines of decisions based upon this syllogism that developed shortly after *Walczak v. State*, 302 Md. 422 (1985).

---

[9] Decisions rendered prior to the trilogy of *Cuffley v. State*, 416 Md. 568 (2010), *Baines v. State*, 416 Md. 604 (2010), and *Matthews v. State*, 424 Md. 503 (2012) generally set forth only two categories of inherently illegal sentences. *See, e.g.*, *Chaney v. State*, 397 Md. 460, 466 (2007) (stating that an inherent illegality means that "there either has been no conviction warranting any sentence for the particular offense or the sentence is not a permitted one for the conviction upon which it was imposed").

[10] *See, e.g.*, *State v. Hannah*, 307 Md. 390, 403 (1986) (vacating the sentence of probation before judgment and ordering trial court to impose mandatory minimum of five years' imprisonment); *Henry v. State*, 273 Md. 131, 151 (1974) (vacating sentence and remanding for resentencing because trial court imposed a sentence greater than the statutory maximum); *State ex rel. Sonner v. Shearin*, 272 Md. 502, 526 (1974) (vacating the improper suspension of sentence and ordering imposition of mandatory term of five years' imprisonment).

In *Armstrong v. State*, we held that a sentence imposed in violation of Maryland Rule 4-245(b) was inherently illegal. 69 Md. App. 23, 35-36 (1986). That Rule governs the notice the State must furnish a defendant prior to trial if it elects to seek a discretionary enhanced sentence for which the defendant may be eligible as a repeat offender.[11] We reasoned that, under *Walczak*, an inherently illegal sentence is one "not permitted by law," that the notice requirement in Rule 4-245(b) is mandatory, and that, therefore, an enhanced sentence imposed in violation of Rule 4-245(b) is a sentence "not permitted by law" and, thus, inherently illegal. *Armstrong*, 69 Md. App. at 34-36.

Several years later, in *Carter v. State*, 319 Md. 618, 621-23 (1990), the Court of Appeals held that, under the circumstances of that case, a court was without authority to impose an enhanced sentence where the State had violated Rule 4-245(b). There, the defendant originally was charged with driving while intoxicated ("DWI") and driving under the influence of alcohol ("DUI") in District Court.[12] *Id.* at 619. Although he had a

---

[11] Maryland Rule 4-245(b), as it existed in 1986, provided:

> **Required Notice of Additional Penalties.** When the law permits but does not mandate additional penalties because of a specified previous conviction, the court shall not sentence the defendant as a subsequent offender unless the State's Attorney serves notice of the alleged prior conviction on the defendant or counsel before the acceptance of a plea of guilty or nolo contendere or at least 15 days before trial in circuit court or five days before trial in District Court, whichever is earlier.

[12] DWI and DUI are proscribed by Maryland Code (1977, 2020 Repl. Vol.) Transportation Article, § 21-902. Subsequent revisions to that statute have redefined DWI and DUI, in effect interchanging which is the greater and which is the lesser included offense. *See Turner v. State*, 181 Md. App. 477, 488-89 (2008) (explaining the change in nomenclature of alcohol-related driving offenses).

19

prior violation, the State failed to file a notice of intent to seek an enhanced penalty. *Id.* at

622. Carter was convicted of DUI and sentenced to 60 days, and he took a de novo appeal

to the circuit court. *Id.* at 620. Three months later, the State filed its notice, Carter again

was found guilty, and the circuit court imposed an enhanced sentence of one year of

imprisonment. *Id.* The Court of Appeals held that, because the State had failed to comply

with Rule 4-245(b), "the circuit court was prohibited from sentencing [Carter] as a

subsequent offender," and it vacated his sentence and remanded for the imposition of a

lawful sentence. *Carter*, 319 Md. at 623.

But in *Bailey v. State*, 464 Md. 685 (2019), the Court of Appeals held that imposition

of an enhanced sentence in violation of Rule 4-245(b) (notice had been filed five days late

but prior to trial, 464 Md. at 691) is a mere procedural violation rather than an inherent

illegality, *id.* at 697.[13] We must, therefore, conclude that in limited circumstances, and

despite the Constitution's statement in art. IV, § 18(a) that the Maryland Rules have the

force of law, some sentences imposed in violation of a mandatory Maryland Rule are not

inherently illegal when the error is only procedural and without substantive effect. *See*

*Colvin v. State*, 450 Md. 718, 728 (2016); *infra* note 20.

The other line of decisions stems from a series of plea bargaining cases. An early

member of that line of decisions is *Dotson v. State*, 321 Md. 515 (1991). Dotson had been

charged "with a spate of sexual offenses and related crimes." *Id.* at 519. He entered into

a binding plea agreement, pursuant to which he would plead guilty to two of those charges

---

[13] The Court distinguished *Carter* on the ground that there, no notice had been given, but in the case before it, notice had been given but was defective. *Bailey*, 464 Md. at 701.

(which carried a statutory maximum of 20 years each), and the court agreed it would impose a total sentence no greater than 15 years. *Id.* After Dotson pleaded guilty, and the court imposed two concurrent 15-year sentences, he filed an application for sentence review by a three-judge panel, hoping to obtain a reduction in his sentence. *Id.* at 520.[14] Instead, the panel vacated the original sentences and imposed two *consecutive* 15-year sentences. *Id.* at 520-21.

Dotson appealed, contending that the review panel had illegally increased his sentence. *Id.* at 521. The Court of Appeals granted certiorari prior to a decision in this Court, and it held that the review panel had indeed imposed an illegal sentence. *Id.* at 522. It reasoned that the Maryland Rules "have the force of law" and that, under Maryland Rule 4-243(c)(3), the court, in binding itself to the plea agreement, thereby set 15 years as "the maximum [sentence] allowable by law." *Id.* at 523-24.

Thereafter, in *Cuffley v. State*, 416 Md. 568 (2010), *Baines v. State*, 416 Md. 604 (2010), and *Matthews v. State*, 424 Md. 503 (2012), the Court of Appeals clarified that a sentence greater than the maximum set under a binding plea agreement is an inherently illegal sentence. *See Cuffley*, 416 Md. at 575 n.1 (observing that, in *Dotson*, the Court held "that a sentence that exceeds the sentence to which the parties agreed as part of a plea agreement is an illegal sentence within the meaning of Rule 4-345(a)"); *Baines*, 416 Md. at 618 n.6 (noting that Baines's failure "to object to the sentence at the time the court

---

[14] Maryland Rule 4-243(c)(3) requires the State's consent to reduce a sentence below the floor established by a binding plea agreement, but in *Dotson*, the agreement established only a cap. 321 Md. at 524-25. Thus, the review panel properly could have reduced Dotson's sentence without the State's consent.

imposed it [did] not preclude him from arguing on appeal that the sentence breached the plea agreement" because, under *Dotson*, "a sentence that is imposed in breach of a binding plea agreement is an illegal sentence that can be challenged at any time"); *Matthews*, 424 Md. at 517-18 (observing that a sentence imposed in violation of Rule 4-243(c) is "not merely the product of procedural error" but, rather, is "inherently illegal and thereby subject to correction under Rule 4-345(a)").[15]

In comparing these two lines of decisions, we conclude that generally, but not always, sentences that are imposed in violation of a mandatory Maryland rule are inherently illegal. Now, we must decide under which category the instant case falls: a mere procedural error or an inherent illegality. Our decisional law does not reveal a bright-line rule; however, two decisions of the Court of Appeals guide our analysis: *Jones v. State*, 384 Md. 669 (2005), and *Montgomery v. State*, 405 Md. 67 (2008).

In *Jones*, the Court of Appeals concluded that "a sentence is illegal if based upon a verdict of guilt that is not orally announced in open court in order to permit the jury to be polled and hearkened to the verdict." 384 Md. at 672 (footnote omitted). Four charges— including Count Nine, "possession of a firearm by a person convicted of a felony or crime of violence"—were submitted to the jury along with a verdict sheet. *Id.* at 675. The verdict

---

[15] Although the parties to a binding plea agreement are free to decide on a sentence or sentencing range, the sentence arrived at through such an agreement may not, itself, be an illegal sentence. *See, e.g.*, *State v. Crawley*, 455 Md. 52, 55 (2017) (holding that, because a term-of-years sentence for first-degree murder is an inherently illegal sentence, it is subject to correction by adding a period of probation, even where the sentence was imposed under a binding plea agreement).

sheet indicated that the jury had found Jones guilty of all four charges, including Count Nine. *Id.* at 675 n.9.

When the verdict was announced in open court, however, the clerk asked the foreperson its findings on three of the charges but failed to ask the foreperson the jury's verdict on Count Nine.[16] *Id.* at 676. Consistent with the clerk's inquiry, the foreperson declared Jones guilty on three charges, and the clerk recorded that the jury had found Jones guilty of the same three charges. *Id.* at 676-77. Each juror was polled individually and responded affirmatively. *Id.* at 677. Consequently, the jury was not polled and hearkened as to its verdict on Count Nine. *Id.* at 676-77.

By contrast, the clerk recorded the verdict sheet indicating that the jury had found Jones guilty of all four charges, including Count Nine. *Id.* at 675 n.9. "The trial court then excused the jury and postponed sentencing for Jones . . . without there having been any acknowledgment of the discrepancy between the verdict sheet upon which Jones was found

---

[16] The clerk stated:

> Hearken to the verdict as the Court has recorded it, in case No. 01-CR-4319, *State of Maryland v. Kerwin Jones*, your forelady said that you find him guilty of attempted robbery with a dangerous and deadly weapon; find him guilty of attempted robbery, find him guilty of possession of a handgun in the commission of a crime of violence and so say you all?

*Id.* at 676-77.

23

guilty of the four Counts submitted and the hearkened verdicts." *Id.* at 677.  Subsequently,

the trial court sentenced Jones to concurrent sentences on four charges.[17]  *Id.*

Jones appealed, contending that his conviction for possession of a handgun by a

person previously convicted of a crime of violence (Count Nine) was invalid because the

jury foreperson had not announced the verdict in open court in violation of Maryland Rule

4-327(a).[18]  *Id.*  This Court affirmed in an unreported opinion, holding that "the issue was

not properly preserved by Jones because he had failed to object at any time when the verdict

was delivered or when he was sentenced."  *Id.* at 677-78.  Jones sought further review in

the Court of Appeals.  *Id.* at 678.

The Court of Appeals reversed both the conviction and sentence on Count Nine.  *Id.*

at 686.  The Court determined that the return of the verdict sheet did not constitute a return

of the jury's verdict.  *Id.* at 684.  Rather, "'[r]eturning' the verdict in open court mandates

an oral announcement of the verdict upon the conclusion of the jury's deliberations to

enable the defendant to exercise the right to poll the jury as to the verdicts."  *Id.*  The Court

held that, under Rule 4-327, a verdict in a criminal case is not final unless it is "announced

orally to permit the defendant the opportunity to exercise the right to poll the jury to ensure

the verdict's unanimity."  *Id.* at 685.  Because the purported verdict for Count Nine had not

---

[17] The court imposed three sentences because the convictions for attempted armed robbery and attempted robbery merged for sentencing purposes.  *Jones*, 384 Md. at 677 n.10.

[18] Maryland Rule 4-327(a) provides:

**Return.**  The verdict of a jury shall be unanimous and shall be returned in open court.

24

been announced orally in open court, and the jury had not been polled or hearkened to that count, the Court held that the verdict of guilt as to that count could not stand,[19] and the sentence imposed on that count was inherently illegal.[20] *Id.* at 686.

In *Montgomery*, the defendant had been convicted of a violation of probation, and, on May 18, 2001, the circuit court imposed, in pertinent part, the following sentence: "The disposition Mr. Montgomery is 10 years of the 20 year balance of the sentence in this case is hereby ordered executed *effective at 9 a.m. on May 18th of 2004. That is three years from today.*" 405 Md. at 70 (emphasis in original). In deferring the sentence for three years, the court stated that, if Montgomery was "of good behavior" during that period, the court would reconsider the sentence and possibly vacate it. *Id.* Montgomery filed a timely motion for reconsideration, which was never ruled upon. *Id.* at 71. Three years later, after Montgomery failed to report to the Division of Correction, "he was 'picked up' and incarcerated[.]" *Id.*

---

[19] In doing so, the Court necessarily rejected the State's non-preservation argument. *Jones*, 384 Md. at 679-80.

[20] More recently, in *Colvin v. State*, the jury foreperson was not polled individually after she announced the jury's verdicts, although the jury and the foreperson responded "yes" after the clerk hearkened the verdicts. 450 Md. 718, 721-22 (2016). The Court of Appeals determined the procedural irregularity was not cognizable under Rule 4-345(a). *Id.* at 727. The Court explained that, "[t]he most that can be said of Colvin's alleged claim is that the record does not reflect, at least as Colvin would argue, a properly conducted polling process. Yet, that allegation, even if true, does not make a substantive allegation of a lack of juror unanimity without more: the additional lack of a proper harkening of the jury to the verdict." *Id.* at 728. The Court instructed that "[w]ith this case, we reaffirm the rule that only claims sounding in substantive law, not procedural law, may be raised through a Rule 4-345(a) motion." *Id.*

Montgomery filed a motion to correct an illegal sentence, contending "that the three-year deferred reporting date, based on the trial judge's determination that Montgomery would not be imprisoned if he was 'of good behavior between now and three years from now,' was unauthorized and illegal." *Id.* at 72. Montgomery appealed after the circuit court denied that motion, and we affirmed, holding that the sentence was not illegal. *Montgomery v. State*, 175 Md. App. 639, 643 (2007). Montgomery sought further review in the Court of Appeals. *Montgomery*, 405 Md. at 73.

The issue before the Court of Appeals was whether the deferred reporting date "was authorized by Maryland Rule 4-348(d)" and, if not, whether it "amounted to an illegal sentence within the meaning of Maryland Rule 4-345(a)." *Id.* at 69 (footnotes omitted). At the time, Rule 4-348(d) provided that, subject to exceptions not pertinent here, any "sentence or any order or condition of probation may be stayed upon terms the court deems proper."[21] Rejecting the State's contention that the deferred reporting date, contingent upon Montgomery's good behavior, "was at most 'only a procedural error,'" the Court noted that "the three-year deferred reporting date, and the contingencies, were an integral part of the sentence itself." *Id.* at 75-76. The Court further noted that the purpose of the deferral provision in Rule 4-348(d) was to permit a defendant to wind down his or her personal commitments prior to the commencement of sentence, "not to allow a trial judge to monitor the defendant's behavior for several years," a purpose fulfilled by "the statutes and rules relating to suspension [of sentence] and probation." *Id.* at 81. Because "the trial

---

[21] An identical provision now appears at Rule 4-348(c).

26

judge's action was not authorized by Rule 4-348(d)," the Court declared that "the sentence imposed was illegal." *Id.*

Returning to the instant case, as we previously noted, the sentencing court violated Rule 4-346(a) in failing to advise Appellant, during announcement of sentence, that it was placing him on probation upon his release from incarceration and in failing to state the duration of any probation. To the extent that this was an evident mistake in the announcement of sentence, the court made no acknowledgment of any error, nor did it attempt to correct such an error in the manner provided under Rule 4-345(c). Instead, the court *subsequently* included a five-year term of probation in the probation order that was signed by Appellant, and the clerk included that term of probation in the docket entry. Although the State claims that this amounted to a mere "procedural error," we disagree.

In *Robinson v. Lee*, 317 Md. 371 (1989), the Court of Appeals explained the importance of properly advising the defendant of the terms of his sentence at the time of its imposition:

> Fundamental fairness dictates that the defendant understand clearly what debt he must pay to society for his transgressions. If there is doubt as to the penalty, then the law directs that his punishment must be construed to favor a milder penalty over a harsher one.
>
> We hasten to add that the trial judges of this state can avoid this dilemma. All they need do is spell out with reasonable specificity the punishment to be imposed commensurate with the defendant's background, conduct, and personality traits. In our view, this is the beginning of the correctional process. If the punishment is clear, the defendant can begin to conform.

*Id.* at 379-80 (citations omitted).

The omission, however unintentional, of the duration of probation from Appellant's sentence, like the three-year deferred reporting date and its contingencies in *Montgomery*, is "an integral part of the sentence itself." 405 Md. at 76. As in *Jones*, where the Court of Appeals held that a defendant is entitled to rely upon the proper return of a verdict and its oral announcement in open court, and that a violation of that procedure resulted in an illegal sentence, 384 Md. at 686, here too, Appellant was entitled to rely upon the sentencing court's oral announcement of sentence in open court, *Lee*, 317 Md. at 379-80. The sentencing court failed to announce that Appellant was to serve a period of probation, and for how long, following his release from prison. The five-year term of probation that subsequently was added to the probation order resulted in an illegal sentence of probation.

In *Cathcart v. State*, the Court of Appeals explained the result that ensues when a sentencing court purports to impose a split sentence but fails to impose a period of probation.[22] 397 Md. 320, 330 (2007). The result is that the "unsuspended part of the sentence . . . becomes, in law, the effective sentence,"[23] *id.*, and that is precisely the case

---

[22] The Court explained how a court must impose a split sentence:

> Under what is now [Criminal Procedure Article] § 6-222, the court may impose what is commonly referred to as a split sentence. It may (1) impose a sentence for a specified time and provide that a lesser time be served in confinement; (2) suspend the remainder of the sentence; *and* (3) order probation for a time permitted by that statute. If the court chooses that approach, it must impose the full sentence it intends to impose.

*Cathcart v. State*, 397 Md. 320, 326 (2007) (cleaned up).

[23] The only exception is where the unsuspended part of the sentence is, itself, an illegal sentence. In that case, the sentence must be corrected by adding a period of

(Continued)

here. Therefore, we remand with directions to strike the five-year sentence of probation from Appellant's sentence; identify the conditions of lifetime sexual offender supervision imposed at the sentencing hearing in accordance with CP § 11-723; and correct the commitment record, probation order, and docket entries accordingly.[24]

**CASE REMANDED FOR RESENTENCING IN ACCORDANCE WITH THIS OPINION. JUDGMENTS OTHERWISE AFFIRMED. COSTS TO BE ASSESSED 50 PERCENT TO APPELLANT AND 50 PERCENT TO PRINCE GEORGE'S COUNTY.**

---

probation. *See, e.g.*, *State v. Crawley*, 455 Md. 52, 55 (2017) (citing *Greco v. State*, 427 Md. 477, 513 (2012)).

[24] We note that, when the period of probation is stricken, the resulting sentence is a 20-year flat sentence on the flagship charge, and concurrent terms of two years' imprisonment for third-degree sexual offense and six months of imprisonment for second-degree assault, which are permitted sentences for the offenses at issue. *See* Md. Code (2002, 2012 Repl. Vol.), Criminal Law Article ("CR"), § 3-602(c) (stating that the maximum penalty for sexual abuse of a minor may not exceed 25 years); CR § 3-307(b) (stating that the maximum penalty for third-degree sexual offense may not exceed 10 years); CR § 3-203(b) (stating that the maximum penalty for second-degree assault may not exceed 10 years).